# CHARLESTON.

### THE CITY OF BECKLEY v. W. M. WOLFORD AND
### FRENCH G. LUCAS

(No. 5776)

Submitted October 11, 1927.   Decided October 18, 1927.·

LACHES—*When Acting in Governmental Capacity Municipality Not Fettered by Laches, Inattention or Failure of Duty of its Officials, or Amenable to Rule Protecting Bona Fide Purchasers.*

> When acting in a governmental capacity a municipality is not fettered by the laches, inattention or failure of duty of its officials, or amenable to the rule protecting bona fide purchasers.

Appeal from Circuit Court, Raleigh County.

Suit by City of Beckley against W. M. Wolford and others. Verdict for plaintiff, Wolford and others appeal.

*Affirmed.*

*W. H. File,* for appellee.
*Ashworth & Ashworth,* for appellant.

HATCHER, PRESIDENT:

This suit involves the validity of a paving assessment which the city of Beckley is attempting to collect.

From 1920 to 1924, W. M. Wolford owned a lot in Beckley. In 1921, upon a proper petition, the city council entered an order directing that the street in front of this lot be paved. The pavement was completed and accepted by the city in July, 1922.   The cost of the work was reported to and approved by the council, which passed an order in July of 1923 assessing the Wolford lot with $213.97, its pro rata part of such cost.   That assessment was not then entered upon the records of the council, or certified to the clerk of the county court of Raleigh County.   It has not been paid.

Wolford sold the lot to his co-defendant, F. G. Lucas, in 1924.   Before purchasing the lot, Lucas had his attorney ex-

amine the county court records and the minutes of the city council. No assessment against the lot being found, Lucas paid Wolford the entire purchase price.

In July of 1925 without notice to either Wolford or Lucas, the council entered on its records the assessment which it had made against the lot in 1923, as a *nunc pro tunc* order. The city seeks in this suit to enforce the collection of that assessment by a sale of the lot. From a decree in favor of the city, Lucas appeals.

The pleading and the'proof show that the city proceeded under Sec. 34, Chapter 47, Code. As Sec. 34 does not specify that an assessment be recorded, the city contends that an unrecorded assessment is valid, as against the owner of a lot and his vendee, and that it perfected a lien against the lot under Sec. 36 of that chapter by merely passing the order of assessment and leaving it with the city recorder.

The appellant contends that in order for the city to have perfected its lien, the assessment should have been recorded on the minute books of the city and in the office of the clerk of the county court of Raleigh County; and as that was not done prior to his purchase, he is in the position of a *bona fide* purchaser for value without notice, and the city is estopped to assert its lien against him. In support of his contention, appellant cites *Seaman* v. *Ass'n.*, 213 Pac. 938, and *Curnen* v. *New York*, 79 N. Y. 511. The first case held that a municipality supplying its inhabitants with water does so as a proprietor, and as such may be estopped *in pais* just the same as a private corporation or individual. In the instant case, the city was not engaged in a commercial enterprise; consequently, the *Seaman* case has no application. In the *Curnen* case it was held that a municipality was estopped by the misrepresentation of its officers, even though acting in a governmental capacity. That was a case, however, of positive misrepresentation. This case presents no misrepresentation, but only official laches and inattention. The cases are therefore not parallel.

A few decisions have held that the doctrine of equitable estoppel may be asserted against a municipality, even when acting in a governmental capacity, notably *Elder* v. *Fox*, 18

Colo. 263.   But a great author and jurist characterizes such decisions as "exceptional cases", "a law unto themselves", and justifies them only on the theory that the acts which were held to constitute estoppel amounted to fraud.   Dillon Municipal Corporations, 5 ed., par. 1194, and note 1, page 1903.

An examination of the authorities shows that the following principles are thoroughly established:

1.   The state is not subject to the laws of estoppel when acting in a governmental capacity.   21 C. J. 1186, 1187; Herman, Estoppel, Sec. 1128; *Ralston* v. *Weston,* 46 W. Va. 544 (555).

2.   Taxation is an act of sovereignty.   Cooley Taxation, 4th Ed., Secs. 1 and 50.

3.   The taxing power of the state may be delegated to municipalities.   Cooley, *supra,* Sec. 124; Dillon, *supra,* Sec. 1375.

4.   Special assessments are a "species of taxation", and authority to enforce them is "a branch of the taxing power".   *C. & A. Rr. Co.* v. *Joliet,* 153 Ill. 649, 654; *French* v. *Barber Co.,* 181 U. S. 324.   Cooley, *supra,* Sec. 31, Dillon, *supra,* Sec. 1431; Page and Jones, Taxation by Assessment, Secs. 8 and 89; Hamilton Special Assessments, Par. 50.

5.   In the collection of taxes a municipality is not estopped by the laches, inattention or failure of duty of its officials. Chief Justice Marshall, after affirming the vital importance of the taxing power to the existence of a government, said in *Bank* v. *Billings,* 4 Peters 514 (561): "It would seem that the relinquishment of such a power is never to be assumed." Marshall's great contemporary, Justice Story, was equally positive that laches is not chargeable to the State. "The general principle is, that laches is not imputable to the Government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The Government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions." *U. S.* v. *Kirkpatrick,* 9 Wheat. 720 (735).   A century later the

tenets of Story and Marshall are confidently restated by the highest courts and authorities. ''The State is never estopped to exercise any attribute of sovereignty unless it appears to¯ have surrendered it upon a consideration in the most clear and explicit terms, and is *never* estopped because of the ignorant, indifferent or wilful acts of its servants. * * * It is¯ easy to see why this is so. If the acts of indifferent and recreant public servants could estop the State in the exercise of its sovereignty in a few years, it would so limit its power that it could not exercise the functions of government.'' *People* v. *Detroit Ry. Co.*, 228 Mich. 596 (621); 21 C. J. pp. 1186-7; 10 R. C. L. pp. 705, 706, 707; *The State* v. *Brewer,* 64 Ala. 287; *Board of Comm'rs.* v. *Conners,* (Kan.), 245 Pac. 1030; *Benevolent Society* v. *Kelly,* 28 Ore. 173; *Board of Comm'rs.* v. *Dickey,* 86 Minn. 331 (342); *Bank* v. *State,* 60 S. C. 465 (475-6); *Atty. Gen'l.* v. *City of Methuen,* 236 Mass. 564 (578-9); *Chicago Ry.* v. *Douglas Co.,* 134 Wis. 197; *Philadelphia Co.* v. *Omaha,* 63 Neb. 280; *The People* v. *Brown,* 67 Ill. 435; *Vicksburg Ry.* v. *Dennis,* 116 U. S. 665; *State* v. *Sponaugle,* 45 W. Va. 415 (431); *State* v. *Chilton,* 49 W. Va. 453 (457).

6. The burden of taxation follows property into the hands of a purchaser irrespective of notice.

In support of appellant's position to the contrary, he cites *Hogan* v. *Piggott,* 60 W. Va. 541, which holds that the tax delinquent list of a municipality must be certified to the county clerk's office in order to support a sale of property for delinquent taxes. It does not hold, however, that a municipality can not proceed against a vendee of the owner in case such list is not so recorded. The failure to record, or even the failure to assess taxes does not ordinarily protect a purchaser. ''The liability of lands to assessments for local improvements springs from the construction of an authorized public work, which confers a special benefit upon lands. It arises when the work is performed, and the assessment proceeding is merely the determination of the amount which, within the limit of such imparted value, shall be returned to the public. A change in the ownership of lands benefited by the improvement produces no effect upon the ability of

the corporate authorities to make the assessment.'' *In re Comm'rs. of Elizabeth,* 49 N. J. L. 490. *The State* v. *Fullerton,* 143 Mo. 682; *Tallman* v. *Janesville,* 17 Wis. 71 (79). ''A man can not get rid of his liability to a tax by buying without notice. Indeed he can not buy without notice, since the liability is one of the notorious incidents of social life. In this case, the road was cut through the plaintiff's land, and, if he had looked, was visible upon the ground. Whether it had been paid for was for him to inquire.'' *City of Seattle* v. *Kelleher,* 195 U. S. 351 (360). That case was followed in *Bank* v. *Kentucky,* 217 U. S. 443 (454), and in *Willoughby* v. *Chicago,* 235 U. S. 45 (49). It is cited and approved in our own case of *City of Elkins* v. *Hopper,* 82 W. Va. 377 (382), which holds ''the State's power of taxation is not sub-ject to the limitation in the law of conveyancing in favor of *bona fide* purchasers.''

The paved road in front of the Wolford lot put the defendant on inquiry as to the plan adopted for financing the improvement. A proper inquiry of the city officials should have disclosed the plan as well as the failure of Wolford to pay the special assessment against the lot. The foregoing authorities forbid treating the defendant as an innocent purchaser.

Under Sec. 36, Chapter 47, Code, the lien now prosecuted by the city attached to the lot when the assessment against it was made in July 1923. The subsequent change in the ownership of the lot did not divest the city of that lien. The decree of the circuit court will therefore be affirmed.

*Affirmed.*