15924

POWELL v. BOARD OF COM'RS OF POLICE INSURANCE & ANNUITY FUND OF STATE

(41 S. E. (2d) 780)

*Messrs. John W. Crews* and *Heyward Brockinton,* of Columbia, for Appellant, cite:

*Messrs. Sam R. Watt* and *Rufus M. Ward,* of Spartanburg, for Respondent, cite:

March 10, 1947.

STUKES, AJ.: The General Assembly by Act No. 204 of its 1937 session, approved April 17, 1937, created the "Board of Commissioners of the Police Insurance and Annuity Fund of the State of South Carolina", for the stated purpose of raising and managing funds for the granting of insurance and annuities to the peace officers of the State. 40 Stat. 295. It was provided that the Commissioners should be elected by and from the membership of the South Carolina Peace Officers' Association, an eleemosynary institution, and should hold office for two years and until their successors "are elected and commissioned by the Governor". Section 1. It was provided in section 4 that the Board should "have the power to make decisions on applications for insurance and annuities and its decision thereon shall be final and conclusive and not subject to review or reversal except by the Board itself". Section 9 contained the following definition: "Peace Officers, as the term is used in this Act, means all peace officers of the State of South Carolina or subdivisions thereof, who are required by the terms of their employment, whether by election or appointment, to give their time to the preservation of public order, the protection of life and property, and the detection of crime in the State of South Carolina".

Sections 10 and 11 undertook to provide funds by requiring dues not exceeding $12.00 per annum of members of the South Carolina Peace Officers' Association, the proceeds of which are payable to the treasurer of the Board for the exclusive use in payment of the benefits and insurance. It was further enacted in these sections that there should be deducted from every forfeited criminal appearance bond and every fine imposed by all tribunals the sum of $1.00 which shall like-

wise be paid to the treasurer of the Board. Other portions of the Act specify the disability and death benefits, depending upon length of service and earnings of the insured officer, with the details of which we are not now concerned. Section 6 requires annual verified reports of receipts and disbursements by the Board to the Governor and General Assembly of the State, together with other information, with provision of right and power in the Governor or General Assembly to at any time make or cause to be made an examination and audit of the funds.

Section 17, which is argued to be of importance in the case before us, is as follows: "All rights and benefits provided herein shall be subject to future legislative change or revision and no beneficiary shall be deemed to have any vested right thereto".

Respondent has served since the year 1921 as a deputy of the sheriffs of Spartanburg County, having been successively appointed by the various incumbents of that office to serve as their deputy at Drayton Mills, a textile corporation, which has paid his salary pursuant to the authorization and procedure provided by the statutes which now compose sections 3499 *et seq.* of the Code of 1942. During six years prior to 1921 respondent was a similar officer at Watts Mill in Laurens County. He applied in 1937 to the Board of Commissioners of the Police Insurance and Annuity Fund for membership and the usual policy of insurance protection which was issued to ordinary peace officers, to wit, those paid by the State or some governmental subdivision. Their minutes and other records in evidence establish that the Board deliberated upon the very problem now prsented, that is, whether a deputy sheriff appointed pursuant to the cited statutes and paid by a private corporation was entitled to membership in the fund and the insurance provided by it. The Board determined that he was, and accepted respondent, thereupon writing him under date of Sept. 3, 1937, as follows:

"Dear Sir:

At its regular meeting yesterday, the Board of Commissioners took up your application, and considering it a special case, admitted you to membership in the South Carolina Peace Officers Association, as of July 1, 1937.

We are, therefore, enclosing herewith official receipt for your dues for the month of July, leaving you in arrears for the months of August and September at this time. All new members since July 1, 1937, have been received on this basis, that is to say, their dues begin as of July 1, 1937."

Respondent regularly thereafter paid his dues or premiums, having continued in his office and employment as a deputy sheriff until 1946 when he became disabled and made claim for the monthly benefits. The Board refused payment by reason of the enactment in 1940 of amendments to the law whereunder it functions.

Act No. 844, approved April 24, 1940, 41 Stat. 1709, included in its title the stated purpose "to define Peace Officers", and amended section 9 of the original Act of 1937, which is quoted above, to include the requirement that the peace officers referred to in the law are those "who receive their salaries from the State of South Carolina or any of its political subdivisions". No other change was made in the requirements for coverage and there was thereafter no alteration in the former transactions between respondent and the Board. He continued to serve as a deputy sheriff as before and to pay his monthly dues or premiums, which incidentally were doubled by another amendment of the law contained in the Act of 1940; and the deductions from every criminal fine and bond-forfeiture in the State for the benefit of the Board were likewise doubled, by increasing them from $1.00 to $2.00. The Act of 1940 also contained detailed changes in the schedule of benefit payments which are now immaterial. The Act of 1937, as amended in 1940, appears in the Code of 1942 as sections 3811 *et seq.*

The defense to liability is that, under the amendment of 1940, respondent is not entitled to the insurance benefits

because during his long service as deputy sheriff his salary has never been paid by the State or a political subdivision of it, but by a private corporation; and that the Board is not estopped by its acquiescence thereafter and its receipt of dues or premiums because (a) it is an agency of the State, and (b) Section 17 of the original Act, which we have quoted, subjected respondent to forfeiture by the subsequent legislation (the Act of 1940). Appellant tendered return of the dues or premiums paid by respondent, $172.00, which he refused.

The lower court heard the case upon an agreed statement of facts, which we have sufficiently summarized, and decided all issues against appellant, specifically, in effect, that plaintiff was as much a peace officer under section 3499 *et seq.* of the Code as if his salary had been paid by the public, that the Board irrevocably admitted him to the benefits after full knowledge and consideration of the facts and that the Act of 1940 did not remove him from the fold in the absence of positive action by the Board, which on the contrary continued to accept his dues for about six years thereafter and until his right ripened into a claim by reason of his disability. The court construed Section 17 of the original Act to mean not that a member could be completely dislodged by subsequent legislation but that the amounts of the benefits might be subsequently raised or lowered by legislative change, the *amounts being* "the rights and benefits" referred to in the Act. It was further held that the intended effect of the amendment of 1940 (to exclude peace officers not paid by the public) related only to future applications for membership or it would have provided for refunds of premiums and dues already paid, so it was only prospective in its application. It was said that a contrary construction of the amendment would necessitate the holding that it is unconstitutional as attempted to be applied in this case for the contention of appellant would result in the denial to respondent of equal protection of the law and take his property without due process of law, in contravention of the State and Federal Consti-

tutions. Finally it was decided that the doctrine of estoppel is applicable to appellant as to any insurance company for appellant is not a true branch of the State government and the principle is not applicable to it that the State cannot be estopped with respect to its rights. It was held that appellant is not more than a subordinate governmental agency and may be estopped by the conduct and declarations of its officers and agents.

Appropriate exceptions challenge all of the stated conclusions but our consideration need not cover so broad a field for we think the judgment should be affirmed upon the ground of estoppel. Appellant practically concedes the efficacy of the latter in the circumstances of the case but contends that the principle is inapplicable because it is unavailable against the sovereign. *Baker v. Highway Department,* 166 S. C. 481, 165 S. E. 197. It might be soundly said, if necessary for the decision, that appellant does not partake to this extent of the severeignty of the State. It cannot be said of it as of the State Highway Department in the *Baker case,* that the Department is an integral part of the sovereign. Its defense of this action without raising the issue of immunity from suit is virtual concession of the point. It is inconsistent to submit to suit without statutory permission therefor, and nevertheless assert immunity from liability grounded upon estoppel. The State does not own the Police Insurance and Annuity Fund or operate it, nor join in or underwrite its liabilities. The administrators of the fund are not selected by the State or any agency of it; the fact that they are commissioned by the governor appears to be an incongruity of no legal significance or result. The unimportance of a civil commission was discussed at length in *State ex rel. Coleman v. Lewis,* 181 S. C. 10, 186 S. E. 625.

But we think the case turns upon a narrower point. It is that respondent's right arises from contract, the original authority and binding force of which is unquestioned, and granting that it was the State itself which voluntarily entered the relationship as the other contracting

party, it may be subject to the doctrine of estoppel in its contract relations. The rule is a well established one in American courts generally. 19 Am. Jur. 819; 49 Am. Jur. 298; 31 C. J. S. 403 *et seq.; State of Washington, ex rel. Washington Paving Co. v. Clausen,* 90 Wash. 450, 156 P. 554, L. R. A. 1917-A 436. The following is from 31 C. J. S. 411, with numerous supporting citations in the footnotes: "It has been broadly stated that there can be no estoppel against the United States or a state. Nevertheless, subject to limitations and exceptions * * * it is well established that in a 'proper case' the doctrine of equitable estoppel may apply as against the federal and state governments, and that under circumstances which would estop a private individual an estoppel may be asserted against the United States, a state or a state agency, commission, or officer".

An exception is that a State cannot estop itself by grant or contract from the exercise of the police power. *Sanitary District of Chicago v. United States,* 266 U. S. 405, 45 S. Ct. 176, 69 L. Ed. 352, and cases cited. There are other recognized exceptions which are briefly stated in 31 C. J. S. 412 as follows: "When acting in its sovereign or governmental capacity, the United States or a State ordinarily is not estopped. The doctrine of estoppel will not be applied to deprive the government of the due exercise of its police power, or to affect public revenues or property rights, or to frustrate the purpose of its laws or thwart its public policy."

Ordinarily estoppel has been held applicable against the public only when the conduct or representations of the officers or agents giving rise to it are within their authority as such officers or agents. *City of Mt. Vernon v. State of Ohio, Ex Rel. Berry,* 71 Ohio State 428, 2 Ann. Cas. 399, and annotation following at page 403. Relating the stated requirement to this case, it might be argued that insurance of respondent was unauthorized after the amendment of 1940, although legal before, so it should not be held to be now of force by reason of estoppel. But of that rule there is a quali-

fication, firmly established in this State by the leading case of *Crocker v. Collins,* 37 S. C. 327, 15 S. E. 951, 34 A. S. R. 752, opinion by Chief Justice McIver, where it was said that title by adverse possession of a street cannot be acquired against a municipality for presumption of a grant by the municipal authorities cannot be indulged because a municipality is without power to sell or alien streets; but where private possession is accompanied by other circumstances which would render it inequitable that the public should assert its right to regain possession, then, upon the principle of estoppel, a person may be protected against the assertion of the right by the public, in order to prevent manifest wrong and injustice. That case has been cited and followed in subsequent decisions (among them: *Railroad v. Burton,* 67 S. C. 515, 46 S. E. 340, where the authority of it was unsuccessfully attacked, and *Schroeder v. O'Neill,* 179 S. C. 310, 184 S. E. 679) and the principle is pertinent to the facts of the case now before us.

The position of appellant here is manifestly unjust to respondent. It is reasonable to assume that appellant procured passage of the Act of 1940; but it continued to accept respondent's dues or premiums and at a radically increased rate. In view of its present contentiton, it should have declined the receipt of further premiums and refunded the former payments, which was not done or offered. With such notice respondent might have obtained other insurance which he could not after the lapse of six years and the occurrence of disability. It is a very apt case for application of the benign doctrine of estoppel in order to prevent injustice.

Consideration of the stated principles and the facts here presented excludes the case of *Baker v. Highway Department, supra,* as an apposite authority. There no contract was involved, moreover, it was concerned with the collection of a tax. Because of its inapplicability the precedent of it is unaffected by this decision. Another case which possibly should be discussed and differentiated is *Carolina National Bank v. State of South Carolina,* 60 S. C. 465, 38 S. E. 629,

85 A. S. R. 865, where the rule of it was stated in far broader form than was necessary for the decision. There the Superintendent of the State Penitentiary, without authority to receive moneys due it in other form than cash, undertook instead to accept promissory notes and discount them with the plaintiff bank upon his endorsements which the latter claimed evoked the credit of the State. His every act was without statutory authority and it was, of course, properly held under those facts that the State thereby incurred no liability. In the instant case, which is also different in other respects, liability of the State is not even asserted. A more recent decision in which the doctrine of estoppel was denied application against the public was that in *Farrow v. City of Charleston,* 169 S. C. 373, 168 S. E. 852. It was attempted to be predicated upon the erroneous statement of the City Treasurer that there was no paving assessment against a certain property. It therefore affected the collection of public revenue, as to which it is generally held that there can be no estoppel. In addition, that case may be considered to fall within the rule that estoppel cannot grow out of dealings with public officers of limited authority, which is not the case before us. *State ex rel. Workman et al. v. Goldthait,* 172 Ind. 210, 19 Ann. Cas. 737.

The conclusion reached is confirmed by study of the Act of 1940 (41 Stat. 1709) which we think it reasonably susceptible only of the finding of the legislative intention that its terms should be prospectively applied by the Board. The definition of Peace Officer included in the original Act of 1937 had been of force for three years and there is no contention that the respondent was not included in that definition. Under it he had been deliberately accepted in the plan of insurance and retirement, and issued a policy or certificate, with which contract he faithfully complied. Furthermore we find no suggestion in the provisions of the Act of 1940 that it should be retroactive. In section 8 it was provided that it should take effect upon approval by the Governor, which was April 24, 1940. It doubled the maximum

dues or premiums of the assureds and apparently made changes in the benefits, all of which alterations were plainly applicable prospectively. The important effect now contended for by the Board, the automatic expulsion of respondent from the plan of insurance and retirement, was not mentioned in the Act or its title unless by the implication contained in the amended definition of the term Peace Officer. It would be unreasonable, to say the least, to conclude that the Legislature intended to expel the respondent and others similarly situated without expressly dealing with the subject and providing for refund of the dues and assessments which had been regularly paid for the preceding period of approximately three years. However, we do not base the decision on this analysis of the legislative intent evidenced by the Act of 1940 for it is unnecessary in view of the applicability of the rule of estoppel which has been rather fully discussed.

The exceptions are overruled and the judgment affirmed.

BAKER, CJ., FISHBURNE, TAYLOR and OXNER, JJ., concur.