T. R. SAMSELL, DIRECTOR OF THE DEPARTMENT OF NATURAL RESOURCES, *etc., and* PUBLIC LAND CORPORATION, *etc.*

*v.*

THE STATE LINE DEVELOPMENT COMPANY, INC.

(No. 12840)

Submitted February 18, 1970.          Decided April 7, 1970.

Dissenting Opinion May 15, 1970.

*Crockett, Tutwiler & Crockett, J. Strother Crockett, Charles A. Tutwiler,* for appellant.

*Chauncey H. Browning, Jr.,* Attorney General, *Frank M. Ellison,* Deputy Attorney General, for appellees.

CALHOUN, JUDGE:

This case, on appeal by the defendant from a final judgment of the Circuit Court of Kanawha County, involves a declaratory judgment action instituted by T. R. Samsell, as the Director of the Department of Natural Resources of West Virginia, which hereafter in this opinion may be referred to as the department, and the Public Land Corporation of West Virginia, a public corporation, which hereafter may be referred to in this opinion as the Land Corporation, as plaintiffs, against the State Line Development Company, Inc., a corporation, as the defendant. The plaintiffs instituted the action for the purpose of determining the question of the legal validity and the binding effect of a coal mining lease between the Department of Natural Resources, the Public Land Corporation and the defendant, State Line Development Company, which may be hereafter referred to in this opinion as State Line, as the lessee or as the defendant.

The pertinent facts of the case are not in controversy. On September 1, 1962, the Department of Natural Resources, the Public Land Corporation and State Line executed a written contract, designated as a lease, purporting to lease to the defendant, State Line, "all merchantable coal * * * underlying Panther State Forest in McDowell County, West Virginia" with the right to go upon the land and to "mine said coal, either by deep, slope, shaft or other mining methods, but expressly excluding strip mining, auger, bench, or any other form of high wall mining method." The term of the lease was for ten years, "with the right to renew same for a period of ten additional years on the same terms and conditions * * *." The lease further provided that the lessee, State Line, was required to pay a royalty at the rate of fifteen cents a ton for coal produced pursuant to the provisions of the lease.

The lease was signed and executed by Warden M. Lane in his capacity as Director of the Department of Natural

Resources, by Warden M. Lane in his capacity as Secretary of the Public Land Corporation, and by H. R. Pauley in his capacity as president of State Line Development Company.

The land which is subject to the lease was obtained by the State of West Virginia for the use and benefit of the Conservation Commission of West Virginia by two separate deeds dated September 30, 1940, and March 3, 1941, respectively. The tracts of land thus obtained are now operated by the Department of Natural Resources, successor of the Conservation Commission, as the "Panther State Forest".

By a letter dated February 27, 1967, T. R. Samsell, who was at that time the Director of the Department of Natural Resources, notified Charles O. Davis, who then was the president of State Line, that the mining lease between the parties for the removal of coal from Panther State Forest was terminated for the reasons that "such lease and mining operations conducted thereunder are not in the best interests of the State of West Virginia and are not compatible with the intended use of Panther State Forest"; that State Line had violated the terms of the lease; and further that "the lease agreement is null and void because the Director of Natural Resources had no authority to enter into such an agreement."

Almost a month later, Davis, by a letter dated March 23, 1967, responded to the charges made by Samsell in his letter, by stating that State Line considered the lease to be a valid and subsisting one and that the lessee felt that it had fully complied with the terms set out in the lease. In the interest of settling the dispute amicably, Davis proposed in his letter that, among other things, his company would discontinue active mining in the immediate recreation area and begin to reclaim and to rehabilitate the land as required by the lease, and he further proposed that State Line would not open any new mines or build any new roads.

By a registered letter dated June 23, 1967, and signed by Harrison Everett as Executive Secretary of the Public Land Corporation of West Virginia, Davis was notified that, on

June 23, 1967, the Public Land Corporation held a meeting at which it considered the mining operations conducted by State Line on the state lands known as Panther State Forest; that the lessee had not performed its mining operations pursuant to the terms of the lease; and that the Land Corporation had ordered that, "due to violation of the terms of said lease by State Line Development Company, the lease is terminated and further approves the action of the Department of Natural Resources in terminating said lease."

On August 14, 1967, T. R. Samsell, as Director of the Department of Natural Resources, and the Public Land Corporation instituted this declaratory judgment action in the Circuit Court of Kanawha County. The complaint alleges that a controversy existed between the parties concerning the validity of a coal mining lease; that the controversy could not be adjusted or settled by the parties; that title to the lands which were subject to the lease in question was held by the Department of Natural Resources; that Warden M. Lane had no statutory or legal authority to bind the Department of Natural Resources to the lease; that the Land Corporation has authority under Code, 1931, 20-1-15, as amended, to contract for the development of minerals on state lands but that such authority is limited to the lands to which the Land Corporation holds title; and that title to the lands in question being held by the Department of Natural Resources, the signature of Warden M. Lane as Secretary of the Public Land Corporation could not legally bind the Land Corporation by the provisions of the lease.

The answer filed in behalf of the defendant State Line Development Company admits some of the allegations in the complaint but denies that title to the lands subject to the lease is held by the Department of Natural Resources and avers that the title to the property is held by the Public Land Corporation and that the signature of Warden M. Lane, acting in his official capacity as Secretary of the Public Land Corporation, is valid and binding upon the plaintiffs. By way of affirmative defense, the defendant lessee alleges in its answer that it entered into the lease in good faith, relying

on its opinion that the Land Corporation held title to the land and that, relying on the validity of the lease, the defendant and its contractors have expended more than $500,000 in the development and mining of the coal and have paid $119,595.39 in royalties to the Department of Natural Resources.

It was stipulated by counsel in the trial court that the land in question was purchased with funds of the State Conservation Commission, predecessor of the Department of Natural Resources; that the minutes of the Public Land Corporation do not disclose any resolution of that body authorizing the lease or repudiating the action of Warden M. Lane, who was Director of the Department of Natural Resources, and also an ex officio member of the Public Land Corporation and its secretary, when the lease was executed; and that on the oral direction of Warden M. Lane, the royalties arising under the coal lease have, since the execution of the lease, been paid by check to and received by the Department of Natural Resources.

By an order entered on July 31, 1968, the case was submitted to the trial court for decision upon the pleadings, exhibits made a part of the record by court order, the stipulation of facts, and briefs filed by counsel for the respective parties.

The trial court, by an order entered on October 4, 1968, rendered judgment for the plaintiffs, holding that the lease between the parties was void and of no effect. It is from that final order of the trial court that the appeal to this Court has been granted.

By its judgment order entered on October 4, 1968, the trial court made the following findings and adjudications:

"1. Title to the coal underlying Panther State Forest in McDowell County, West Virginia, is vested in the West Virginia Public Land Corporation.

"2. At the time of the execution of the subject coal lease, the West Virginia Director of Natural Resources had no authority to lease said coal, and,

therefore, the execution of said lease by Warden Lane, in his capacity as Director of the Department of Natural Resources, is of no force and effect.

"3. Warden M. Lane, in his capacity as ex-officio secretary of the Public Land Corporation, in executing the subject coal lease, did so without authority, sanction, or later ratification by said corporation, and, therefore, such execution is not binding upon the Public Land Corporation or the State of West Virginia.

"4. The State of West Virginia is not estopped from denying the validity of the subject lease."

Accordingly, the trial court, by its judgment order declared that the alleged lease "is void and of no effect." The trial court's written opinion was made a part of the record by the judgment order.

In its petition for an appeal, State Line makes six assignments of error. In the brief of counsel for State Line filed in this Court, the assignments of error have been condensed and summarized as three objections to the findings and rulings made by the trial court, which three objections are as follows:

"(1) That Warden M. Lane, as Secretary of the Public Land Corporation, did not have the power to execute the lease of September 1, 1962;

"(2) That the Public Land Corporation has not, since the execution of this lease, ratified the act of its Secretary in so entering into the lease; and

"(3) That plaintiffs, as arms of the State of West Virginia, are not now estopped to deny the validity of said lease."

Chapter 54, Acts of the Legislature, First Extraordinary Session, 1933, created "a public land corporation" to be known as the Public Land Corporation of West Virginia. The Act contained the following provision: "The corporation shall be vested with the title of the state in public lands, the title to which now is or may hereafter become absolutely vested in the state of West Virginia by reason of any law governing the title of lands within the state."

Chapter 133, Acts of the Legislature, Regular Session, 1961, created a new Chapter 20 of the Code, 1931, to be known as the State Natural Resources Law. This statute created the Department of Natural Resources as successor to the former Conservation Commission, and provided for the appointment by the governor of a director to be the chief executive officer of the newly-created department. Warden M. Lane was appointed to that position and he was succeeded in the same position by T. R. Samsell, one of the plaintiffs in the declaratory judgment action involved in this case. References hereafter will be made to the provisions of Chapter 20 of the Code enacted in 1961 as stated above.

Code, 1931, 20-1-15, as a consequence of the 1961 enactment, contains the following provisions:

"The public land corporation of West Virginia, heretofore created and established, shall be continued as an activity of the department of natural resources. The corporation may sue and be sued, contract and be contracted with, plead and be impleaded, and have and use a common seal. It shall be a public benefit corporation composed of the governor as chairman, the director of the department of natural resources as secretary, the commissioner of agriculture, the attorney general, and the director of the engineering experiment station at West Virginia University, none of whom shall receive additional compensation as members of the corporation.

*"The corporation shall be vested with the title of the State in public lands, the title to which now is or may hereafter become absolutely vested in the State of West Virginia* by reason of any law governing the title of lands within the State, except such public lands of the State as may be by law specifically allocated to and used by other state agencies, institutions and departments.

"The corporation is hereby authorized and empowered to:

\* \* \*

"(5) *Expend the income from the use and development of public lands for the purpose of liquidating obligations incurred in the acquisition, development*

*and administration of such lands, until all such obligations have been fully discharged, and thereafter pay such income into the state fund for general revenue purposes and uses.*

"*The corporation shall have the authority to designate lands to which it has title for development and administration for the public* use including forestation, recreation, wildlife, stock grazing, agricultural rehabilitation [and] homesteading or other conservation activities and *may contract or lease for the proper development of oil, gas or minerals,* except that no contract or lease may be entered into for the extraction and removal by stripping or auger mining of coal, and water rights within or upon the lands or property under its control. \* \* \*." (Italics supplied.)

The opinion of the trial court contains the following language which we believe to be legally sound and which, therefore, we adopt as a part of the decision and opinion of this Court:

"I am of opinion that the 1961 Act, insofar as it deals with the acquisition and leasing of lands, is clear and unambiguous and needs no construction. The Act plainly says that from and after that date the Public Land Corporation shall be vested with the title in all property and lands except such lands as may by law be specifically allocated to and used by other state agencies, institutions and departments. I am therefore of opinion that title to the coal underlying Panther State Forest, in September, 1962, was clearly, by statute, vested in the Public Land Corporation.

"It follows that the Department of Natural Resources had no title and no authority to execute the lease in 1962, and that the act of Warden M. Lane as director of that department was wholly unauthorized, and ultra vires.

"I am further of opinion that, title being in Public Land Corporation, the secretary of that corporation, the same Warden M. Lane, had no authority, real or implied, to execute the lease, absent a direction of the Corporation, or ratification by it. I find as a matter of fact that there was no direction to him by the Corporation to execute the lease."

Counsel for State Line refer to the fact that Code, 1931, 20-1-7(2), as amended, authorizes the Director of Natural Resources to sign and execute "in the name of the State by the 'department of natural resources' any contract or agreement with * * * corporations, associations, partnerships or individuals." This statutory provision is not in point for the reason that title to the land constituting Panther State Forest is in the Public Land Corporation. Counsel for State Line also rely upon Code, 1931, 20-1-15, as amended, which provides that the Director of the Department of Natural Resources shall be an ex officio member and secretary of the Public Land Corporation. These provisions afford no answer to the fact that the record fails to disclose that the Public Land Corporation, holder of legal title to the land, either authorized or ratified the making and execution of the lease.

At this stage of the case, it is not questioned that the trial court correctly held that the title to the land constituting Panther State Forest is in the Public Land Corporation. It is not contended that the Public Land Corporation, by formal corporate action or otherwise, expressly authorized the making of the lease or the execution thereof by Warden M. Lane. We consider it worthy of note that the lease fails to disclose on its face any source of authority in Lane to make or to execute the lease in question. Indeed, the record fails to disclose that any person, public official or public body, other than Warden M. Lane and H. R. Pauley, participated in negotiations leading to the execution of the lease.

We are not certain of the precise purport, intent or meaning of the provision in Code, 1931, 20-1-15, as amended, which states that the Public Land Corporation shall be continued as "an activity of" the Department of Natural Resources. That language may be designed and intended to cover a situation such as this, in which the Land Corporation holds title to lands conveyed to the state for the use and benefit of the Department of Natural Resources for the purpose of maintaining and operating the lands as Panther State Forest. Whatever that language may mean, it does not affect the admitted fact that title to the land in question is in the Public Land Corporation.

State Line, in entering into the lease, was charged with knowledge of the clear language of Code, 1931, 20-1-15, as amended, which vests the Public Land Corporation "with the title of the State in public lands." State Line was charged with knowledge of the language of the same Code section which gives to the Public Land Corporation authority and power "to designate lands to which it has title * * * for the proper development of oil, gas or minerals, * * *." *Totten v. Nighbert,* 41 W.Va. 800, pt. 3 syl., 24 S.E. 627. The trial court correctly held that the action of Warden M. Lane in making and executing the lease was without legal authority, ultra vires and void.

Counsel for State Line contend that the action of Lane in making and executing the lease was subsequently ratified by the Public Land Corporation. In his written opinion, which was made a part of the record, the judge of the trial court found and stated that "there is nothing in this record to indicate that the Public Land Corporation as such received any information concerning this lease until late in the year 1966, or took any action with reference thereto until February, 1967." Findings of fact made by a trial court, sitting in lieu of or without a jury, will not be set aside by this Court on appeal unless such findings are clearly wrong. *Creasy v. Tincher,* 154 W.Va. 18, 173 S.E.2d 332; *In Re: Thacker,* 152 W.Va. 455, pt. 2 syl., 164 S.E.2d 301. We are of the opinion that the record discloses no action of the Public Land Corporation in relation to the lease other than to disavow the lease agreement and, therefore, that the trial court correctly held that the lease agreement was not ratified, expressly or impliedly, by the Public Land Corporation. *Thompson v. Laboringman's Mercantile & Manufacturing Company,* 60 W.Va. 42, pt. 4 syl., 53 S.E. 908.

Counsel for State Line, by brief and oral argument, rely upon legal principles relating to apparent authority and principles relating to estoppel, as applied to agents of private individuals or private corporations. Legal principles in these categories are not applied to a like extent to officers, agents or employees assuming to act upon behalf of the state.

Principles relating to persons acting or assuming to act in behalf of the state are summarized in *Cunningham v. The County Court of Wood County*, 148 W.Va. 303, 309-10, 134 S.E.2d 725, 729-30, as follows:

> "The general rule is that an estoppel may not be invoked against a governmental unit when functioning in its governmental capacity. 31 C.J.S., Estoppel, Sections 138-142, pages 675-719; Anno., 1 A.L.R. 2d 338.

> "A governmental unit is not estopped to deny the validity of *ultra vires* acts of its officers. 31 C.J.S., Estoppel, Section 143, page 719. See also 19 Am. Jur., Estoppel, Section 167, page 819; 7 M.J. Estoppel, Section 7, page 246. A state or one of its political subdivisions is not bound by the legally unauthorized acts of its officers; and all persons must take note of the legal limitations upon their power and authority. *Schippa v. West Virginia Liquor Control Commission*, 132 W. Va. 51, 54, 53 S. E. 2d 609, 611; *Armstrong Products Corporation v. Martin*, 119 W. Va. 50, 53, 192 S. E. 125, 127; *State v. Conley*, 118 W. Va. 508, 531, 190 S. E. 908, 918; *The City of Beckley v. Wolford et al.*, 104 W. Va. 391, 140 S. E. 344; *Coberly v. Gainer*, 69 W. Va. 699, 703, 72 S. E. 790, 792; *State v. Chilton*, 49 W. Va. 453, pts. 4 and 5 syl., 39 S. E. 612.

> "In accordance with a well settled principle, this Court has stated many times that the state and its political subdivisions are not bound, on the basis of estoppel, by the *ultra vires* or legally unauthorized acts of its officers in the performance of governmental functions. *Ralston v. Town of Weston*, 46 W. Va. 544, 555, 33 S. E. 326, 330-331; *City of Beckley v. Wolford, et al.*, 104 W. Va. 391, 393, 140 S. E. 344, 345; *Mewha v. Public Service Commission of West Virginia*, 122 W. Va. 305, 309, 9 S. E. 2d 868, 870; *Utz v. Board of Education of Brooke County*, 126 W. Va. 823, pt. 2 syl., 30 S.E.2d 342; *Schippa v. West Virginia Liquor Control Commission*, 132 W. Va. 51, 54, 53 S. E. 2d 609, 611; *Cawley v. Board of Trustees, etc.*, 138 W. Va. 571, 583, 76 S. E. 2d 683, 690. * * *."

Counsel for State Line contend that the state may be bound, on principles of estoppel, when acting in a proprietary

capacity, as distinguished from a governmental capacity. There is authority for that legal proposition. *Cawley v. The Board of Trustees of the Firemen's Pension or Relief Fund of the City of Beckley,* 138 W.Va. 571, 583, 584, 76 S.E.2d 683, 690; *The City of Beckley v. Wolford,* 104 W.Va. 391, 140 S.E. 344, and authorities there cited. There may be some question as to whether a given activity of the state is proprietary or governmental. *Schippa v. West Virginia Liquor Control Commission,* 132 W.Va. 51, 53 S.E.2d 609.

The trial court obviously was of the opinion that if the state was engaged in leasing a portion of its land for coal mining purposes, it was engaged in a proprietary function. In his written opinion, the judge of the trial court stated:

"While the disposition of the land by the lease in question may have been a proprietary function, and while the Department of Natural Resources may have profited by the receipt of the royalties, yet in my view the people of the State are sovereign and are entitled to have their public lands protected by the collective judgment of the members of the Public Land Corporation and not by the whim or fancy of the secretary thereof. Moreover, while it is also true that the statute designates the Public Land Corporation as an activity of the Department of Natural Resources, I do not believe that the Public Land Corporation should be charged with the knowledge of Warden M. Lane concerning the transaction. * * *."

Even if it is assumed that the state would be engaged in a proprietary function if it should make a legally valid coal mining lease covering the land known as the Panther State Forest, we believe, to some extent at least, the assertion that the state was engaged in a proprietary function in this case begs the question. The basic question presented for decision is whether the state in this instance was legally engaged in leasing a portion of its lands for coal mining purposes. The state, from the standpoint of legality and lawfulness, was engaged, through the Department of Natural Resources, in using the land in question as Panther State Forest as a means of preserving natural resources and for the purpose of affording

a means of recreation and enjoyment for the benefit of citizens of this state and tourists from other states. The maintenance and operation of Panther State Forest, the purpose for which the land was lawfully being used by the state, was, we believe, a governmental function.

The doctrine of estoppel is an equitable doctrine. 31 C.J.S., *Estoppel,* Section 63, page 390. Even in situations in which the doctrine applies, it should be applied with caution and in furtherance of equitable considerations. "The doctrine of estoppel should be applied cautiously and only when equity clearly requires it to be done." *Humble Oil & Refining Company v. Lane,* 152 W.Va. 578, pt. 3 syl., 165 S.E.2d 379. "To raise an equitable estoppel there must be conduct, acts, language or silence amounting to a representation or a concealment of material facts." *Stuart v. Lake Washington Realty Corporation,* 141 W.Va. 627, pt. 7 syl., 92 S.E.2d 891. To the same effect, see *Barnett v. Wolfolk,* 149 W.Va. 246, 255-56, 140 S.E.2d 466, 472; *Wallace v. St. Clair,* 147 W.Va. 377, 400, 127 S.E.2d 742, 757; *Greco v. Meadow River Coal and Land Company,* 145 W.Va. 153, pt. 5 syl., 113 S.E.2d 79; *Helmick v. Broll,* 150 W.Va. 285, 291-92, 144 S.E.2d 779, 783; *Kimble v. Wetzel Natural Gas Company,* 134 W.Va. 761, 769, 61 S.E.2d 728, 733. "To deprive an owner of the legal title to real estate by the application of that drastic doctrine, the basis therefor ought to be established by clear and convincing proof; and if that element of certainty is wanting there can not be an estoppel." *Barnes v. Cole,* 77 W.Va. 704, 709, 88 S.E. 184, 186. See also *Fisher v. West Virginia Coal and Transportation Company,* 137 W.Va. 613, 626, 73 S.E.2d 633, 640.

The general principles relating to estoppel were thoroughly discussed in *Norfolk & W. R. Co. v. Perdue,* 40 W.Va. 442, 21 S.E. 755, particularly in 40 W.Va. at 454, and 21 S.E. at 759, a case quite analogous to the present case except that there public lands were not involved. In applying principles relating to estoppel, the Court, in the *Perdue* case, made the following statement in the third point of the syllabus: "When one of two innocent persons—that is, persons each guiltless

of an intentional moral wrong—must suffer a loss, it must be borne by that one of them who by his conduct, acts, or omissions has rendered the injury possible."

The record fails to disclose that the Public Land Corporation, by any act or omission, misled State Line by inducing it to enter into the lease or by inducing it to expend money pursuant to the lease. State Line was charged with knowledge of the statute which vests title to the land in question in the Public Land Corporation and authorizes that public corporation to enter into leases covering minerals on land owned by the state. State Line was also charged with knowledge of Code, 1931, 20-1-15(5), as amended, which requires the Public Land Corporation to "Expend the income from the use and development of public lands for the purpose of liquidating obligations incurred in the acquisition, * * * and thereafter *pay such income into the state fund for general revenue purposes and uses.*" (Italics supplied.)

In disregard of the statute quoted immediately above, State Line, on the mere oral direction of Warden M. Lane, paid all royalties derived from the coal mining lease to the Department of Natural Resources. We are of the opinion that, in the circumstances of this case, and in considering principles relating to the doctrine of estoppel, the equities weigh heavily in favor of the State of West Virginia and heavily against State Line.

We have previously stated that this Court has held that the principles of estoppel should be applied reluctantly when individuals or private corporations are involved. Estoppel is applied with much greater reluctance against the state or the public. 43 Am. Jur., *Public Works and Contracts,* Section 19, pages 760-61; Annot., 1 A.L.R.2d 330, Section 3, page 340 et seq.; 31 C.J.S., *Estoppel,* Section 138, page 675 et seq.; 28 Am. Jur. 2d, *Estoppel and Waiver,* Section 122, page 782 et seq.

We recognize that the cancellation of the lease will impose some hardship on State Line. Doubtless it has profited by

its mining operations heretofore performed on the land constituting Panther State Forest. This is indicated by its unwillingness to terminate the lease. While it has expended a considerable sum of money in its mining operations, we assume that a considerable portion of that expenditure was for machinery and other mining fixtures so that, in a great measure, such expenditures of money may be retrieved. On the other hand, it is reasonable to assume that great harm would result to Panther State Forest and hence to the public by continued coal mining operations pursuant to the lease.

For reasons stated in this opinion, the judgment of the Circuit Court of Kanawha County, holding the lease in question to be void and of no effect, is affirmed.

*Affirmed.*

HAYMOND, JUDGE, dissenting:

I can not concur in the decision of the majority of this Court which, in affirming the judgment of the Circuit Court of Kanawha County, deprives the defendant of an investment of more than one-half million dollars, which it made in good faith in reliance upon the validity of the lease executed by officers and representatives of the Department of Natural Resources and the Public Land Corporation with the defendant on September 1, 1962 and under which the defendant, openly and certainly with the knowledge of all the State officials composing the Public Land Corporation, conducted operations from September 1, 1962 until February 27, 1967, a period of more than four years, without any question as to the validity of the lease being raised by any representative of the Department of Natural Resources or any representative of the Public Land Corporation. During that period of time and until the present action was instituted on August 14, 1967, the defendant paid and the State received and still retains more than $120,000.00 for coal produced and for timber cut and removed by the defendant in the development of the land covered by the lease. The majority admits that the doctrine of equitable estoppel, which in my judgment

clearly applies in this case, is an equitable doctrine, yet the decision of the majority in holding the lease to be null and void without giving consideration to the resulting enrichment of the State and the exceptionally heavy loss to the defendant has given judicial sanction to the gross inequity suffered by the defendant.

As stated in the majority opinion, the material facts are not disputed. It is also true, as set forth in the majority opinion, that the Public Land Corporation, not the Department of Natural Resources, is vested with the title to the real estate here involved. It is also undisputed that Lane, the then Director of the Department of Natural Resources, and the then secretary and member of the Public Land Corporation was in full charge of the affairs of the Land Corporation which apparently seldom met and instead entrusted its every day transactions to the secretary. I can not agree with the statement in the majority opinion that the record does not disclose that the Public Land Corporation by any act or omission misled the defendant either by inducing it to enter into the lease or by inducing it to spend the money pursuant to the lease, or that great harm would result to the Panther State Forest, a public recreation area of the State, from mining operations under the lease.

The record shows that in connection with the execution of the lease it bore an unsigned stamp of approval as to form of Attorney General Robertson, a member of the Public Land Corporation, and subsequently on January 10, 1963, a form of modification of the lease was endorsed by an Assistant Attorney General in behalf of the Attorney General. It is likewise unreasonable to assume, as does the majority, that the other members of the Public Land Corporation, who are the Governor, as its Chairman, the Commissioner of Agriculture, and the Director of the Engineering Experimental Station at the West Virginia University did not know of the existence of and the operations under the lease.

As stated, it is clear that the Attorney General knew about it and, of course, Lane, who negotiated it and collected the

royalties for a period of more than four years, knew about it, yet despite these undisputed facts, the defendant was never informed that there was any question concerning the validity of the lease until it received a letter dated February 27, 1967, from Samsell, who had succeeded Lane as Director of the Department of Natural Resources, in which two of the stated reasons for terminating the lease were that the mine operations conducted under it were not in the best interest of the State or compatible with the use of the Panther State Forest and that the defendant had violated the terms of the lease. Neither of those reasons is sustained by the record.

This operation was clearly a proprietary operation upon the part of the State. In my judgment the action of the Public Land Corporation, with the apparent knowledge of all its members of the existence of the lease and the operations under it, in failing to register any objection to the operations of the defendant and in permitting it to make an investment of more than one-half million dollars, which also must have been known to the members of the land corporation, and permitting its secretary to receive in excess of $120,000.00 in the form of royalties which were accepted and are still retained by the State, clearly operated to estop the land corporation to deny the validity of the lease. Though, as stated by the majority and as established by numerous court decisions, the doctrine of equitable estoppel should be applied cautiously, in my opinion, if the doctrine should ever be applied in any situation, equity requires its application to the admitted facts in the case at bar.

It is also true, as stated in the majority opinion, that as a general rule estoppel may not be invoked against a governmental unit when functioning in its governmental capacity. The rule, however, is different when a governmental unit, including the State, is acting in its proprietary capacity. The question whether equitable estoppel may be asserted against the State when acting in its proprietary capacity has not been determined in any prior decision of this Court of which I am aware or which research has revealed. Statements in the opinion in *Cawley v. The Board of Trustees of the Firemen's*

*Pension or Relief Fund of the City of Beckley,* 138 W.Va. 571, 76 S.E.2d 683, and *The City of Beckley v. Wolford,* 104 W.Va. 391, 140 S.E. 344, which involve the question of estoppel as applied to municipalities, indicate that when a governmental unit acts in its proprietary capacity, equitable estoppel may be invoked against such governmental unit. The opinion in the *Cawley* case contains this statement: "When the action relates to a proprietary function, equitable estoppel may be invoked against municipalities."

There is ample text and case authority for the proposition that when a governmental unit, including the State, acts in a proprietary capacity, equitable estoppel may be invoked against it.

In 31 C.J.S., *Estoppel,* Section 138a, is this quotation from *United States v. Lawrence County,* District Court of Pennsylvania, 173 F. Supp. 307, *reversed on other grounds,* 280 F.2d 462, *affirmed,* 364 U.S. 628, 81 S. Ct. 357, 5 L. Ed. 2d 363: "An equitable estoppel ordinarily may not be invoked against a government or public agency functioning in its governmental capacity; but where the elements of an estoppel are present it may be asserted against the government when acting in its proprietary capacity." In 28 AM. JUR. 2d, *Estoppel and Waiver,* Section 133, after stating that there is authority to the effect that in a proper case estoppel may be applied against a governmental agency, is this language: "A governmental agency may be held estopped as right and justice require where the act or contract relied on as creating the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized."

In Section 6, Annotations, 1 A.L.R.2d page 346, the text is: "Assuming, however, the presence of all the prerequisites for the application of the doctrine of estoppel as between individuals, under some circumstances the public or the United States or the state may be held estopped if an individual would have been held estopped; as when acting in a proprietary or contractual capacity; * * * ." See also

*The Falcon,* 19 F.2d 1009; *People v. Gustafson,* 53 Cal. App. 2d 230, 127 P.2d 627; *The Alexander Company v. City of Owatonna,* 222 Minn. 312, 24 N.W.2d 244; *State v. Horr,* 165 Minn. 1, 205 N.W. 444; *State ex rel. Caldwell v. Lincoln Street Railway Company,* 80 Neb. 333, 114 N.W. 422; *State ex rel. Upper Scioto Drainage and Conservancy District v. Tracy,* 125 Ohio St. 399, 181 N.E. 811; *Powell v. Board of Commissioners of Police Insurance and Annuity Fund of State,* 210 S. C. 136, 41 S.E.2d 780, 1 A.L.R.2d 330; *Strand v. State,* 16 Wash. 2d 107, 132 P.2d 1011; *Chicago, St. Paul, Minneapolis and Omaha Railway Company v. Douglas County,* 134 Wis. 197, 114 N.W. 511, 14 L.R.A., N.S., 1074.

In the opinion in *State v. Horr,* 165 Minn. 1, 205 N.W. 444, is this statement: "It is the law that, when a state makes itself a party to an action or to a contract in its proprietary capacity, it is subject to the law of estoppel." The above quotation is supported by the citation of numerous decisions. The opinion also contains this language: "Estoppel rests upon principles of universal justice and commands the observance of honest dealing."

In *State ex rel. Upper Scioto Drainage and Conservancy District v. Tracy,* 125 Ohio St. 399, 181 N.E. 811, the court held that the state, by participating in a proceeding through one of its departments acting within the scope of its departmental powers concerning lands as to which the state exercised a proprietary function, was estopped to claim that the law under which the proceeding was brought was unconstitutional or violative of a compact between the United States and the State of Ohio. In the opinion the court said: "The state can no more 'eat its pie and have it' than can the ordinary corporation or individual."

In *Powell v. Board of Commissioners of Police Insurance and Annuity Fund of State,* 210 S. C. 136, 41 S.E.2d 780, 1 A.L.R.2d 330, the court held that a state may be subject to the doctrine of estoppel in its contractual relations, and that the rule is a well-established one in American courts generally, and in the opinion used this quotation from 31

C.J.S., *Estoppel*, Section 140: "It has been broadly stated that there can be no estoppel against the United States or a state. Nevertheless, subject to limitations and exceptions * * * it is well established that in a 'proper case' the doctrine of equitable estoppel may apply as against the federal and state governments, and that under circumstances which would estop a private individual an estoppel may be asserted against the United States, a state, or a state agency, commission, or officer."

Under the foregoing authorities I would hold that the State, acting by the Public Land Corporation which had the authority to make the lease, is estopped to deny the validity of the lease.

In my opinion the lease is a valid instrument, binding upon the Land Corporation and the defendant, for the additional reason that even though the record fails to show that the execution of the lease by Lane, as Secretary of the Public Land Corporation, was expressly authorized, it has been ratified by the action of the Land Corporation in accepting and retaining the royalties provided by the lease, at the direction of Lane, as Director of the Department of Natural Resources, and as Secretary of the Public Land Corporation. It is clear to me that the payment of these royalties as required by the Director of the Department of Natural Resources constituted payment to the Public Land Corporation which by Section 15, Article 1, Chapter 20, Code, 1931, as amended, was continued "as an activity of the department of natural resources."

In view of that provision of the statute, unlike the majority, I have no trouble in reaching the obvious conclusion that the payment of the royalties and their retention as required by the Director of the Department of Natural Resources and the Secretary of the Public Land Corporation enured to the benefit of the Public Land Corporation, and there is nothing in the record to indicate that such payments were not applied to its use and benefit. In short, on this point, it is my considered opinion that the State should not be permitted to accept

the benefits of this lease and then successfully contend that it is not bound by it.

For the reasons stated in this dissenting opinion I would reverse the judgment of the Circuit Court of Kanawha County and hold the lease to be valid and binding upon the Public Land Corporation.

I am authorized to state that Judge Caplan concurs in the views expressed in this dissenting opinion.