## STATE EX REL. BERTHA KRAKE v. MINNEAPOLIS FIRE DEPARTMENT RELIEF ASSOCIATION.[1]

March 24, 1939.

No. 32,098.

G. A. Will, for appellant.

M. J. Timmons, for respondent.

HOLT, JUSTICE.

Relator's husband, Joseph E. Krake, became an active member of the fire department of the city of Minneapolis in 1887 and served as such until May 1, 1910, when, having attained the age of more than 50 years, he was retired on pension under the provisions of the laws under which defendant operates. On January 5, 1910, he married relator and lived with her until his death, February 26, 1937. Relator's application to be placed on defendant's pension roll as widow was rejected, and this suit for a writ of mandamus to be placed upon such roll and be awarded a widow's pension followed. Findings were made and conclusions of law in favor of defendant. Relator appeals from the judgment.

The only assignment of error is that the amended conclusions of law are not warranted by the facts found. The controlling conclusion of law assailed is: "That relator take nothing by this action and that the alternative writ of mandamus heretofore issued

[1]Reported in 284 N. W. 884.

be and the same hereby is discharged." Whether the court's conclusion is right depends upon the applicability and construction of the statute in force at the time relator became a widow. At that time the widow's right to claim a pension was fixed by this provision of L. 1933, c. 177, § 24 (3 Mason Minn. St. 1938 Supp. § 3750-24):

"When a service pensioner, disability pensioner, or deferred pensioner, or an active member of such relief association dies, leaving

"(a) A widow who was his legally married wife, residing with him, and who was married to him while or prior to the time he was on the payroll of the fire department; and who, in case the deceased member was a service or deferred pensioner, was legally married to said member at least three years before his retirement from said fire department;   *   *   *"

Clearly, if this provision is applicable relator is excluded, for she was not married to Mr. Krake three years before his retirement from the fire department; she was married less than four months before such time. That the law in force when the claim to pension arises governs the right to the pension is settled by Gibbs v. Minneapolis F. D. R. Assn. 125 Minn. 174, 145 N. W. 1075, Ann. Cas. 1915C, 749. Defendant is incorporated under L. 1907, c. 24, which was amended by L. 1913, c. 318, where the term "widow" was defined, and we held that amendment was effective as of the date of its passage and cut off the pension right of a widow who did not come within the definition. In Minegar v. Minneapolis F. D. R. Assn. 126 Minn. 332, 148 N. W. 279, a proceeding to punish defendant as for contempt for failure to pay a fireman's widow pension adjudged by the judgment entered July 28, 1913, pursuant to the findings and order for judgment filed November 9, 1912, it is to be noted that the judgment was entered after L. 1913, c. 318, was enacted, but the action was tried and findings were filed before its passage. The amendment of 1913 provides that a fireman's widow entitled to pension should "not include the surviving common-law wife of such fireman or pensioner." Before its enactment a common-law wife of a fireman was on a parity with a legally married

wife so far as pertains to the right of pension upon his death. The court applied the Gibbs case, stating [126 Minn. 333]:

"It was there held that as between the state and members of the fire department the pension was a gratuity, and the state could take it away except so far as it had accrued, without affecting a vested right or violating the Constitution; and that the term 'widow' as used in the statute was intended to apply as of that date to widows then receiving pensions as well as to widows who might thereafter claim them. If the plaintiff, the widow of Minegar, was his common-law wife, she was not entitled to a pension after April 16, 1913. The defendant paid her pension until May 1, 1913, and refused to pay it longer."

It was conceded that plaintiff was the common-law wife of the deceased fireman; and the order to show cause why defendant should not be punished for contempt was discharged. We think these two decisions are controlling here. When relator became a widow, L. 1933, c. 177 (3 Mason Minn. St. 1938 Supp. §§ 3750-1 to 3750-30), was in force, and thereunder she could not qualify as a pensioner of her husband because she had not been legally married to him three years before he became a pensioner. It is not for the court to search for a good reason for this change. That is wholly for the legislature. There is no room for construing the statute as applicable only to women who marry firemen pensioners subsequent to its passage.

Relator relies on Buckendorf v. Minneapolis F. D. R. Assn. 112 Minn. 298, 127 N. W. 1053, 1133; Stevens v. Id. 124 Minn. 381, 145 N. W. 35, 50 L.R.A. (N.S.) 1018. In the first case the by-law which stood in the way of the plaintiff's right was held not authorized by the statutes of defendant's incorporation. And in the Stevens case the plaintiff was on the pension roll for disability contracted in the service as fireman, and it was held not due process to strike him from such roll without a hearing. Some language therein used *arguendo* may seem to conflict with the holding in the Gibbs and Minegar cases; but we think that there is nothing in any of our decisions that precludes the legislature from designating the pen-

sioners of the fund provided by the legislature for relief associations organized under L. 1907, c. 24. The yearly dues of the firemen that go into the fund cannot be of great importance.

State ex rel. Holton v. City of Tampa, 119 Fla. 556, 159 So. 292, 98 A. L. R. 501; Dodge v. Board of Education, 302 U. S. 74, 58 S. Ct. 98, 82 L. ed. 57, do not support relator but the reverse.

The judgment is affirmed.

Mr. Justice Hilton, incapacitated by illness, took no part.