**MINNEAPOLIS TEACHERS RETIRE-
MENT FUND ASSOCIATION, et
al., Appellants,**

v.

**STATE of Minnesota, Respondent.**

**No. CX–92–271.**

Court of Appeals of Minnesota.

Aug. 18, 1992.

Review Denied Oct. 28, 1992.

Curtis D. Forslund, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Catharine F. Haukedahl, Sol. Gen., St. Paul, for respondent.

Considered and decided by FORSBERG, P.J., and HUSPENI and PETERSON, JJ.

## OPINION

PETERSON, Judge.

Appellants initiated an action seeking a declaratory judgment that 1975 Minn.Laws ch. 306, § 30 is unconstitutional as applied and that Minn.Stat. § 354A.07 (1974) is revived and in full force and effect.[1] Appel-

lants assert the State of Minnesota is obliged to provide adequate funds to maintain the Minneapolis Teachers Retirement Fund in an actuarially sound condition and that the state's failure to do so amounts to an unconstitutional impairment of the contract rights of Minneapolis teachers. Appellants moved for summary judgment. The trial court denied the motion and, instead, granted summary judgment for respondent.

## FACTS

The Minneapolis Teachers Retirement Fund Association (MTRFA) is a non-profit corporation created in 1909, pursuant to 1909 Minn.Laws ch. 343, to serve as the fiduciary for retirement funds for teachers employed by the Minneapolis Board of Education.

The original 1909 legislation authorized teachers in a city having a population of more than 50,000 to establish a retirement fund association, with the consent of the city council. 1909 Minn.Laws ch. 343, § 1. An association created under the 1909 act was required to

formulate a plan for * * * the collection and disbursement of a fund for the benefit of retired teachers * * * which * * * shall be submitted to the * * * city council * * * for approval.

1909 Minn.Laws ch. 343, § 3. The 1909 legislation provided that the plan formulated by the association "may include a provision that a portion of said fund shall be raised by taxation upon the property of the said city." 1909 Minn.Laws ch. 343, § 5. The legislation also provided that a

plan may provide in the event that the funds of the association are not sufficient to pay annuities in full, as provided in said plan, in any particular year, that the amount available shall be pro-rated between those entitled to receive the same.

1909 Minn.Laws ch. 343, § 8.

If a plan with a taxation provision was adopted, the association was required to annually certify

[1] Minn.Stat. §§ 354A.06–07 (1974) were re- pealed by 1975 Minn.Laws ch. 306, sec. 34.

to the proper authorities, who have charge of the levying of taxes in said city and in the county in which said city is located, the amount which it will be necessary to raise by taxation in order to carry out the plan so adopted * * * for the coming year, and it shall be the duty of the said authorities so having charge of the levying of taxes to include in the tax levy for the ensuing year, a tax in addition to all other taxes, sufficient to produce said sum so certified.

Provided, however, that said tax shall in no event exceed one-tenth of a mill upon all taxable property of said city. 1909 Minn.Laws ch. 343, § 6, *codified at* Minn.Gen.Stat. § 1427 (1913).[2]

The plan adopted by MTRFA in 1909 included a taxation provision and a pro rata distribution provision.

In 1921, Minn.Gen.Stat. § 1427 (1913) was amended to provide that when an association certified to city and county authorities the amount of taxation necessary to carry out the plan for the next year, the taxing authorities were required to levy "so much of the sum so certified as the said authorities having charge of the levying of taxes for school purposes in said city shall approve." 1921 Minn.Laws ch. 303, § 1.

In 1945, the statute was further amended to provide that, when an association made its certification to the taxing authorities,

any portion of the sum so certified which is not included in the tax so levied and collected shall be increased with interest at the rate currently earned on the invested funds of the Association and added to the amount certified for the ensuing year

1945 Minn.Laws ch. 390, § 2. However, local taxing authorities retained the discretion to levy taxes in an amount less than the certified amount.[3]

In 1967, the statutory requirement that MTRFA annually certify to local taxing authorities the amount necessary to carry out the plan for the next year was amended to require that, before making the certification, a copy of the proposed certification, and other information, be provided by the association to the state auditor. 1967 Minn.Laws Extra Sess. ch. 32, art. 3, § 3. The state auditor was then required to pay to the association from state funds

an amount equal to the average amount that the state of Minnesota would be required to pay annually for all contributing members of the [association] under the state teachers retirement fund program multiplied by the number of contributing members of the [association].

*Id.*

The effect of this amendment was to require the state to pay to MTRFA the average amount per teacher the state would have paid to the state teachers retirement fund if the Minneapolis teachers had been members of the state fund rather than members of MTRFA. However, the 1967 amendment also required that the amount paid to MTRFA by the state be deducted from the amount MTRFA proposed to certify to local taxing authorities and that the amount necessary to raise by taxation in order to carry out the plan be reduced by the amount of the state's payment. *Id.* Local taxing authorities retained authority to levy property taxes to remedy any deficiency between the state payment and the amount necessary to carry out the plan.

In 1975, the legislature repealed both the requirement that MTRFA annually certify an amount to local taxing authorities and the authority of local taxing authorities to levy property taxes to make payments to MTRFA. 1975 Minn.Laws ch. 306, §§ 30,

---

**2.** 1909 Minn.Laws ch. 343 was amended by 1911 Minn.Laws ch. 383, and the legislation was codified at Minn.Gen.Stat. §§ 1422–1430 (1913). By 1945 the legislation had been codified at Minn. Stat. §§ 135.19–.27. In 1965, these sections were renumbered as Minn.Stat. §§ 354.15–.23. In 1974, these sections were again renumbered as Minn.Stat. §§ 354A.01–.10.

**3.** By levying less than the certified amount, local taxing authorities contributed to a deficiency that, by 1975, exceeded $70 million. This deficiency existed before enactment of the 1975 and 1985 amendments appellants challenge.

34. Instead, the legislature required the state to make contributions to MTRFA

equal to the amount, expressed as a percentage of payroll, that the state of Minnesota is required to pay for all contributing members of the state teachers retirement association.

1975 Minn.Laws ch. 306, § 30.

In 1985, the legislature created a new system for making employer contributions to teacher retirement association funds, including MTRFA. 1985 Minn.Laws 1st Spec.Sess. ch. 12, art. 11, §§ 1–2. Under the new system, the state would no longer make payments directly to MTRFA. Instead, the state was required to make a payment to the Minneapolis school district and the district was required to make employer contributions to MTRFA. 1985 Minn.Laws 1st Spec.Sess. ch. 12, art. 11, §§ 2, 13. The amount of the state payment to the district was determined by a formula. 1985 Minn.Laws 1st Spec.Sess. ch. 12, art. 11, § 2. The amount of the payment could be less than the total employer contributions the district was required to make to MTRFA.

In 1990 MTRFA had an unfunded actuarial accrued liability (UAAL) of over $400 million.

The trial court found that a pension is part of appellants' employment contract. However, the court concluded that actuarial soundness of the retirement fund was not a term of the contract and that, because MTRFA retirees have always received their full benefits, the contract has not been impaired. Therefore, the trial court granted summary judgment for respondent.

### ISSUE

Did the legislature's 1975 and 1985 modifications of the funding method for MTRFA unconstitutionally impair a contractual obligation?

**4.** U.S. Const. art. I, § 10, cl. 1 provides, in part, "No state shall * * * pass any * * * law impairing the obligation of contracts."

### ANALYSIS

On appeal from summary judgment we are to determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In discharging this obligation, we view the evidence in the light most favorable to the party against whom summary judgment has been granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

Challenges to the constitutionality of statutes are disfavored and we presume every legislative enactment to be constitutional. *Jacobsen v. Anheuser–Busch, Inc.*, 392 N.W.2d 868, 872 (Minn.1986), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 941, 93 L.Ed.2d 991 (1987). The burden rests with appellants to demonstrate beyond a reasonable doubt that the act violates a constitutional provision. *Id.* On such questions we owe no deference to the trial court's conclusions. We are not bound by the trial court's legal conclusions. *Frost–Benco Elec. Ass'n. v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

Appellants claim the employment contract of Minneapolis teachers has included

a systematic method of funding [employer's pension fund contributions], which assured the teachers of Minneapolis that the employer's contribution to their pension fund was backed by the taxing power of the city, and that taxes needed to pay the required contributions would be levied upon request.

Appellants complain that the removal of this "system" has made the retirement fund actuarially unsound and "the actuarial unsoundness of the fund itself works a contract impairment."

The United States and Minnesota constitutions prohibit passage of any law that impairs a contractual obligation.[4] We apply a three part test to determine whether a claimed contractual impairment is unconstitutional.

Minn. Const. art. I, § 11 provides, in part, "No * * * law impairing the obligation of contracts shall be passed."

The initial question is whether the state law has, in fact, operated as a substantial impairment of a contractual obligation. The severity of the impairment increases the level of scrutiny to which the legislation is subjected. If there is a substantial impairment, the state, at the second step, must demonstrate a significant and legitimate public purpose behind the legislation. Third, the state's action is examined in the light of this public purpose to see "whether the adjustment of the rights and responsibilities of the contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption."

*Christensen v. Minneapolis Mun. Employees Retirement Bd.*, 331 N.W.2d 740, 750–51 (Minn.1983) (quoting *Energy Reserves Group v. Kansas Power & Light*, 459 U.S. 400, 412, 103 S.Ct. 697, 705, 74 L.Ed.2d 569 (1983).

■ We first consider whether the 1975 modification to the funding method for MTRFA was constitutional. 1975 Minn. Laws ch. 306, §§ 30, 34. Under the three part test, we first ask whether the modification has, in fact, operated as a substantial impairment of a contractual obligation. To answer this question we must determine whether the employment contract of Minneapolis teachers in 1975 included an employer obligation to make contributions to MTRFA in an amount sufficient to keep the retirement fund actuarially sound.

Appellants do not contend there was an express contract provision that required contributions sufficient to keep the retirement fund actuarially sound. They argue their contract rights regarding pension benefits arise from the statutes that authorized and regulate MTRFA. Appellants contend, "If the legislature did not expressly promise to maintain actuarial soundness, it nevertheless did so by implication."

Minnesota courts have abandoned the notion that retirement benefits in the public sector are nothing more than a gratuity. *Christensen*, 331 N.W.2d at 746. Our supreme court has stated:

We think the legislature intended that public employees have a "right" to [an] offered pension, that this "right" is a protectable entitlement though subject to the paramount interest of the state to modify it in the public interest, but that this right is not to be defined by strict conventional contract principles.

*Id.* at 748.

■ Instead, the protectable right of a public employee to an offered pension is to be determined by applying the doctrine of promissory estoppel.

Promissory estoppel is the name applied to a contract implied in law where no contract exists in fact. The effect of promissory estoppel is to imply a contract from a unilateral or otherwise unenforceable promise coupled by detrimental reliance on the part of the promisee.

*Id.* (quoting *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 283, 230 N.W.2d 588, 593 (1975)).

Promissory estoppel applies when:
(1) a promise has been made, (2) which the promissor expected or should have reasonably expected to induce action of a definite and substantial character by the promisee, (3) which in fact induced such action, and (4) in circumstances requiring enforcement of the promise to avoid injustice.

*AFSCME Councils 6, 14, 65 & 96 v. Sundquist*, 338 N.W.2d 560, 568 (Minn.1983).

In applying promissory estoppel, two factors must be kept in mind: (1) What has been promised by the state? and (2) to what degree and to what aspects of the promise has there been reasonable reliance on the part of the employee?

*Christensen*, 331 N.W.2d at 749.

The statutes that authorized creation of MTRFA and governed its operation did not create a contractual right to employer contributions to the retirement fund in an amount that will maintain the actuarial soundness of the fund. *See* 1909 Minn. Laws ch. 343. There has been no promise by the state that contributions would be made to the fund on an annual or any other basis in an amount that would keep the fund actuarially sound. No language in

the 1909 legislation or in any of the acts that amended the 1909 legislation can be interpreted as a promise to make employer contributions in an amount that would keep the fund actuarially sound.

The original 1909 legislation made no promise that MTRFA would ever be created; it only authorized creation. Whether MTRFA would actually be created was left to the discretion of Minneapolis teachers and the Minneapolis city council. *See* 1909 Minn.Laws ch. 343, § 1.

The legislation did not promise that a fund, if created, would receive funds raised through taxation by the state or local taxing authorities; it only stated that a plan "may include a provision that a portion of said fund shall be raised by taxation upon the property of the said city." 1909 Minn. Laws ch. 343, § 5. Whether a portion of the fund would be raised by taxation depended upon the actions of Minneapolis teachers and the Minneapolis city council.

If a plan included a taxation provision, the enabling legislation provided only that the fund would certify to local taxing authorities the amount of money needed to "carry out the plan * * * for the coming year." *See* 1909 Minn.Laws ch. 343, § 6. There was no statutory requirement that the amount certified each year be the amount necessary to pay all actuarially accrued obligations for the year.[5]

The portion of the 1909 legislation that undercuts appellants' argument most seriously is the limitation on the amount of property tax that could be levied at the request of the fund. If a tax was levied, in no event could it exceed one-tenth of a mill. 1909 Minn.Laws ch. 343, § 6. If the fund accrued actuarial liabilities that exceeded the amount that could be raised by a one-tenth of a mill property tax, the statute prohibited raising the excess amount through taxation. This language demonstrates that, from the outset, there was no promise to ensure the actuarial soundness of the fund.

**5.** We note that the "for the coming year" language remained in the statute until the levy

It is also significant that 1921 Minn.Laws ch. 303, § 1 amended the property tax levy requirements of the 1909 legislation to provide that, when retirement fund association officers certified the amount necessary to be raised through taxation, the actual property tax levy was only required to include "so much of the sum so certified as the said authorities having charge of the levying of taxes for school purposes in said city shall approve."

This amendment made the contribution of any tax revenues to the retirement fund a matter subject to the discretion of local taxing authorities. If local taxing authorities chose not to levy a tax to support the retirement fund, the statute did not require them to do so. The amended statute cannot be interpreted as a promise by the state that the retirement fund would remain fully funded.

Finally, the 1909 legislation permitted a retirement fund plan to

> provide in the event that the funds of the association are not sufficient to pay annuities in full, as provided in said plan, in any particular year, that the amount available shall be pro-rated between those entitled to receive the same.

1909 Minn.Laws ch. 343, § 8. This language demonstrates that, from the time creation of MTRFA was authorized, the legislature considered the possibility that the fund would not have enough money to pay all retirement benefits earned under the plan. This possibility is inconsistent with an implied promise that the fund would remain actuarially sound.

Appellants argue this section was necessary because an unfunded accrued actuarial liability could be caused by a sudden collapse of the stock market. However, the statute does not limit application of the section based upon the cause of an unfunded liability. Whether the liability is caused by inadequate contributions, poor investment performance, excessive operating costs, or benefit increases, the pro rata apportionment language applies.

authorization was removed in 1975.

Contrary to appellants' assertions, no statute can be reasonably interpreted as an explicit or implicit legislative promise that the Minneapolis teachers retirement fund would be maintained in an "actuarially sound manner." Absent such a promise, appellants' claim that 1975 Minn.Laws ch. 306, § 30 unconstitutionally impaired a contract that required actuarial soundness must fail. If no promise of actuarial soundness was ever made, there was no contract to be impaired.

■ The trial court noted that appellants did not specifically seek a declaration that 1985 Minn.Laws 1st Spec.Sess. ch. 12, art. 11, §§ 1–2 unconstitutionally impairs a contract, but chose to address this issue because appellants raised the argument. We also note that appellants' complaint did not seek a declaration that the 1985 act is unconstitutional, but we address the issue because the trial court addressed it as if it had been properly asserted.

When the legislature repealed the authority to levy local property taxes for the purpose of making employer contributions to the retirement fund, it required the state to "assume the total employer obligation." 1975 Minn.Laws ch. 306, § 30. The 1975 act also established a formula for determining the amount of the employer contribution the state was required to make. *Id.*

In 1985, the legislature enacted a new system for making employer contributions to the fund under which the state made payments to the Minneapolis school district and the district was required to make the employer contributions to MTRFA. 1985 Minn.Laws 1st Spec.Sess. ch. 12, art. 11, §§ 1–2, 13. Appellants argue that repealing the state obligation to make contributions directly to MTRFA and assigning responsibility for making employer contributions to the Minneapolis school district without restoring the previously repealed local property tax levy authority unconstitutionally impairs the Minneapolis teachers' employment contract.

Appellants place great emphasis upon the fact that 1985 Minn.Laws 1st Spec. Sess. ch. 12, art. 11, § 13 repealed language that stated "the state shall assume the total employer contribution." Appellants seem to argue that this language created a state obligation and its repeal is an impairment of contract. Appellants' argument ignores the actual effect of the 1985 legislation.

In 1985, the legislature did not change the amount of the employer contribution to MTRFA. Only the method of making the employer contributions to the fund was changed. While it is true that the Minneapolis school district again became responsible for making the employer contributions, the district was required to make exactly the same contributions to the fund that the state had been required to make. 1985 Minn.Laws 1st Spec.Sess. ch. 12, art. 11, § 13.

Because the amount of the employer contributions to the fund was not changed, the 1985 legislation had no effect on the financial condition of the fund. Also, because the amount of the employer contributions to the fund was not affected by the 1985 legislation, there has been no impairment of contract.

■ Finally, appellants argue that a series of legislative acts that established financial reporting requirements for pension funds and created commissions to study pension funding issues implied an obligation to fully fund the Minneapolis teachers retirement fund. 1955 Minn.Laws ch. 829; 1967 Minn.Laws ch. 549. This argument is without merit.

The various legislative acts that created commissions to deal with pension issues are not evidence of a legislative promise to fully fund any retirement fund. The prescribed duties of these commissions were limited to studying, analyzing, reporting and making recommendations to the legislature. All of these duties are activities that typically precede adoption of any public policy by the legislature. The fact that the legislature has, for many years, required financial reports that allow it to carefully monitor the financial condition of public employee retirement funds cannot reasonably be interpreted as a promise to fully fund any plan.

Although there may be good reasons for pursuing a pension funding policy that requires funds to be set aside regularly to meet all future pension obligations, there may also be good reasons for not pursuing such a policy. The legislature is responsible for making this policy decision. It is not within the power of this court to second guess the policy determinations of the legislature.

## DECISION

The legislature's 1975 and 1985 modifications of the funding method for MTRFA did not unconstitutionally impair the employment contract of Minneapolis teachers. The statutes governing the creation and operation of MTRFA contain no promise that the Minneapolis teachers retirement fund will be kept actuarially sound. We affirm the trial courts grant of summary judgment for respondent.

Affirmed.