**Richard J. AXELSON, Respondent,**

v.

**MINNEAPOLIS TEACHERS' RETIRE-MENT FUND ASSOCIATION, et al., Petitioners, Appellants.**

No. C8–94–2153.

Supreme Court of Minnesota.

March 8, 1996.

2. Revenue Act of 1978, Pub.L. No. 95–600,   § 530, 92 Stat. 2763, 2885 (1978).

Robert D. Butterbrodt, St. Paul, for appellant.

Roger A. Peterson, Therese Dosch Anderson, Minneapolis, for respondent.

## OPINION

PAGE, Justice.

We are called upon to determine whether the board of trustees of a public pension plan has the discretionary authority to permit a plan member to purchase retirement service credits for years when the member was on leave of absence and the applicable plan documents do not provide for such a purchase. Richard J. Axelson was a teacher employed by the Minneapolis Public Schools Special School District No. 1 (District) from September 1959 until his retirement in June 1994. Axelson was granted two 1–year leaves of absence from his teaching duties to serve as a Peace Corps volunteer, teaching English in Brazil during the 1966–67 and 1967–68 school years. During each of his years as a teacher in the district, Axelson was a member of the Minneapolis Teachers Retirement Fund Association (MTRFA), the public pension plan that covers teachers in the Minneapolis public schools. While Axelson was on leave, no pension contributions were made on his behalf.

On March 30, 1974, Axelson wrote a letter to the MTRFA, inquiring as to whether he could purchase retirement service credits for the 1966–67 and 1967–68 leaves. The MTRFA responded, "Credit for Leaves of this type is allowed under certain circumstances, but must be approved by the Board of Trustees." The MTRFA Board approved Axelson's request to purchase the retirement service credits on May 15, 1974, and at the same time informed him that he needed to pay $2,870.36 on or before December 31, 1974, or "an additional amount will be due for interest." The record does not reflect the Board's rationale for granting Axelson's request. In December of 1974, Axelson tele-

phoned the MTRFA and asked if the payment had to be made by December 31 to purchase the retirement service credits. He was informed that payment was not necessary by December 31. He was also informed that if payment was not made by that date, $2,999.52 would be due on or before December 31, 1975. Finally, he was informed that if payment was not made by December 31, 1975, interest would continue to accrue until the payment was made.

Axelson took no further action until 1990, when he advised the MTRFA that he wanted to purchase the retirement credits. After obtaining legal advice, the MTRFA informed him that its "laws do NOT have any provision which would allow [him] to make payment and obtain teaching service credit for this time." (Emphasis in original.) In response, Axelson did nothing until 1993 when he requested that the MTRFA provide a current calculation of the amount he needed to pay to purchase the retirement service credits. At that time, the MTRFA reminded Axelson of the position it took in 1990 and indicated that the MTRFA had never had the authority to grant retirement service credits for his leaves of absence. Axelson retired on June 30, 1994.[1] In a letter to Axelson dated August 24, 1994, the MTRFA informed Axelson that its Board's decision to disapprove his request to purchase the retirement service credits was final.

Maintaining that he would have purchased the retirement service credits in 1974 if the MTRFA had not represented to him that he could purchase the credits at a later date, Axelson challenged the Board's decision by writ of certiorari to the court of appeals, arguing that the MTRFA was estopped from denying him the right to purchase the retirement service credits. The court of appeals, agreeing with Axelson, determined that the 1974 MTRFA Board had the authority to grant Axelson's request to purchase the retirement service credits and that the doctrine of promissory estoppel prevented the MTRFA from denying Axelson the right to purchase the retirement service credits. *Ax-*

*elson v. Minneapolis Teachers' Retirement Fund Ass'n,* 532 N.W.2d 594, 597–98 (Minn. App.1995).

The MTRFA's appeal presents three issues for our review:

(1) Did the 1974 MTRFA Board have the authority to grant Axelson's request to purchase the retirement service credits?

(2) Was the 1994 MTRFA Board estopped from denying Axelson's request to purchase the retirement service credits?

(3) If Axelson is entitled to purchase the retirement credits, what interest rate should be applied in calculating the amount required to purchase the retirement service credits?

On the record before us, we conclude that the 1974 MTRFA Board lacked the authority to grant Axelson's request to purchase the retirement service credits. Therefore, we reverse the court of appeals and reinstate the decision of the 1994 MTRFA Board.

■ A quasi-judicial decision of an agency that does not have statewide jurisdiction will be reversed if the decision is "fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law." *See Dokmo v. Independent Sch. Dist. No. 11,* 459 N.W.2d 671, 675 (Minn.1990). We have analogized a public retirement fund board to an administrative agency. *Fassbinder v. Minneapolis Fire Dep't Relief Ass'n,* 254 N.W.2d 363, 368 (Minn.1977).

■ Axelson's claim to the retirement service credits is based on the doctrine of promissory estoppel, which implies a contract where the promisor makes a unilateral or otherwise unenforceable promise and the promisee relies on the promise to his or her detriment. *Christensen v. Minneapolis Mun. Employees Retirement Bd.,* 331 N.W.2d 740, 748 (Minn.1983) (holding that the protectable right of a public employee to an offered pension is determined by applying promissory estoppel). This court has held, however, that "[w]here an agency has no

---

1. If permitted to purchase the retirement credits, Axelson's pension would increase by approximately $180 per month.

authority to act, agency action cannot be made effective by estoppel." [2] *Senior Citizens Coalition v. Minnesota Pub. Utils.,* 355 N.W.2d 295, 304 (Minn.1984); *see also Spaulding v. Board of County Comm'rs,* 306 Minn. 512, 515, 238 N.W.2d 602, 604 (1976) (county cannot be bound by estoppel to make unauthorized payments to county officer where sick leave policy covers only county employees); *Board of Educ. v. Sand,* 227 Minn. 202, 211, 34 N.W.2d 689, 695 (1948) ("[e]stoppel cannot be invoked to confer upon a political subdivision of the state governmental power otherwise lacking").

Therefore, to resolve this case, the threshold issue we must address is whether the 1974 MTRFA Board, under either its general discretionary authority to determine benefits or by retroactive application of an amendment to the MTRFA Articles of Incorporation (articles), had the authority to approve Axelson's request to purchase retirement service credits for the 1966–67 and 1967–68 school years. We conclude that the 1974 MTRFA Board did not have the authority to approve Axelson's request to purchase the retirement service credits.

The MTRFA was created in 1909 "to serve as the fiduciary for retirement funds for teachers employed by the Minneapolis Board of Education." *Minneapolis Teachers Retirement Fund Ass'n, v. State,* 490 N.W.2d 124, 125 (Minn.App.1992). At the time that Axelson made his inquiry about purchasing the retirement service credits in 1993, the MTRFA was organized under the Minnesota Nonprofit Corporation Act, Minn.Stat. ch. 317A, and was governed by chapter 354A, portions of chapter 356, as well as chapter 356A. The MTRFA is managed by a seven-member board of trustees. The documents that comprise the MTRFA's pension plan include the association's articles, bylaws, and the applicable statutes.

The MTRFA Board is required to carry out its duties in accordance with the law and the plan documents, Minn.Stat. § 356A.05(b) (1994), and owes a fiduciary duty to:

(1) the active, deferred, and retired members of the plan, who are its beneficiaries;

(2) the taxpayers of the state or political subdivision, who help to finance the plan; and

(3) the state of Minnesota, which established the plan.

Minn.Stat. § 356A.04, subd. 1 (1994). The MTRFA Board members, in the exercise of their fiduciary duties, are held to a prudent person standard, requiring them to "exercise that degree of judgment and care, under the circumstances then prevailing, that persons of prudence, discretion, and intelligence would exercise in the management of their own affairs." Minn.Stat. § 356A.04, subd. 2 (1994).

It is well settled that "the law in force when the claim to a pension arises governs the right to the pension." *Butler v. Minneapolis Police Relief Ass'n,* 283 Minn. 70, 72, 166 N.W.2d 705, 706 (1969) (quoting *State ex rel. Krake v. Minneapolis Fire Dep't Relief Ass'n,* 205 Minn. 54, 55, 284 N.W. 884, 885 (1939)). Here, this means the law in effect during the 1966–67 and 1967–68 school years, because that is when any claim Axelson had to the retirement service credits arose. It is also well settled that a public employee's right to pension benefits is governed by the pension plan's articles of incorporation and bylaws as authorized by statute. *See generally Butler,* 283 Minn. at 72, 166 N.W.2d at 706; *Gibbs v. Minneapolis Fire Dep't Relief Ass'n,* 125 Minn. 174, 176, 145 N.W. 1075, 1076 (1914). The applicable plan documents—the articles of incorporation, bylaws, and governing statutes in effect during the 1966–67 and 1967–68 school years—are silent regarding purchase of retirement ser-

---

2. We note that other jurisdictions have concluded that estoppel may be applied even if the promise was made without authority where special circumstances exist and the injustice is great enough. *E.g., Powell v. Police Ins. & Annuity Fund,* 210 S.C. 136, 41 S.E.2d 780 (1947) (applying estoppel to award disability benefits to a law enforcement officer where amendment to plan cut him off from benefits but state pension commissioners had continued to accept contributions at a radically increased rate and the officer could not obtain other insurance after a lapse of 6 years and occurrence of disability). Because no such special circumstances are present in this case, we need not address whether we should adopt this position.

vice credits for service in the Peace Corps; however, Axelson argues that the Board had the discretionary authority to allow him to purchase the credits under its general authority to determine benefit eligibility.[3] Axelson, citing to *Mattson v. Flynn,* 216 Minn. 354, 361, 13 N.W.2d 11, 15 (1944) ("[p]ension and retirement acts are remedial in nature and as such [are] entitled to a liberal construction to insure the beneficial purposes intended"), urges us to construe the plan documents liberally to ensure the beneficial purposes intended by the pension plan.

While we generally construe pension plan documents liberally in favor of the beneficiary, here there is no specific provision to construe because the applicable plan documents in effect at the time of Axelson's leaves do not address a member's right to purchase retirement service credits for leaves *similar to Axelson's.* The 1974 MTRFA Board's authority to determine benefits is limited by its fiduciary duties, and where there is no express authority permitting a member to purchase retirement service credits for leaves of this kind, we will not without more find the authority implied. *Patry v. Board of Trustees, Firemen's Pension Fund,* 190 Conn. 460, 461 A.2d 443, 448 (1983) (refusing "to read enabling legislation to confer unlimited discretion on administrators of public pension funds" and concluding that sufficient guidelines must support the exercise of discretionary authority).

The 1974 MTRFA Board's general authority to determine benefits did not confer upon it the authority to create benefits not contemplated by the relevant plan documents. Further, the 1974 MTRFA Board did not have the authority to grant pension benefits on an ad hoc basis. We have said in the past that in the absence of specific legislative authority or any provision in the retirement fund association articles or bylaws allowing recovery of contributions upon resignation of members, police officers are not entitled to a refund of their contributions. *Sandell v. Saint Paul Police Relief Ass'n,* 306 Minn. 262, 236 N.W.2d 170 (1975). We should not reach a different result in this case because here, like *Sandell,* there was no specific legislative authority or provision in the MTRFA plan documents authorizing the 1974 MTRFA Board to grant Axelson's request to purchase retirement service credits. There was, however, a provision in the plan documents permitting purchase of retirement credits for service in the American Red Cross in time of war or other emergency. The fact that the Red Cross provision was included in the plan documents lends further support to our conclusion that Axelson's Peace Corps service was not intended to be covered. Accordingly, we conclude that the 1974 MTRFA Board had no authority to grant Axelson the right to purchase retirement service credits for his 1966–67 and 1967–68 leaves of absence.

█ Axelson also maintains that the 1974 MTRFA Board had authority to allow him to purchase the retirement service credits for the leaves through retroactive application of a 1972 amendment to the articles allowing purchase of retirement service credits in specified situations. The 1972 amendment was in effect at the time of Axelson's request in 1974 and provided that a member on a leave of absence could receive teaching service credits under the following circumstances:

[W]hen [a] leave is granted to accept employment involving teaching or research in the educational field, provided that the employer be a non-profit organization and credit for such service while so employed by a non-profit organization has been approved in each instance by the Board of Trustees * * *.

Based on this language, Axelson makes two arguments. First, Axelson argues that

---

**3.** The MTRFA Board's general authority to determine benefit eligibility is as follows:

The Board shall receive, hold, invest and disburse moneys belonging to the Association and make such rules for the transaction of its business and for the control of the several funds hereby created and for the determination and the payment of the benefits hereby provided as it shall deem necessary or convenient for putting into effect and carrying on the retirement system of the Association.

and

The Board shall determine the benefit to be paid to a member or beneficiary. Minneapolis Teachers' Retirement Fund Association Articles of Incorporation art. V (1966 & 1968).

302

this provision applies to his service in the Peace Corps. This argument is without merit. There is no evidence in the record before the court to support Axelson's contention that service in the Peace Corps constitutes service while employed by a non-profit organization, nor is there any basis for the court to simply assume that the contention is correct. Next, Axelson argues that because there is no language expressly limiting this 1972 amendment to prospective application, it may be applied retroactively to cover his 1966–67 and 1967–68 leaves of absence. By analogy to Minn.Stat. § 645.21 (1994) ("No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."), Axelson's argument that the amendment should be applied retroactively fails because there is no indication that the 1972 amendment was intended to be applied retroactively. We see no reason to treat this amendment to the articles any differently than we would an amendment to a pension statute. The 1974 MTRFA Board did not have the authority to apply the amendment to Axelson's leaves of absence which took place during the 1966–67 and 1967–68 school years.

■ Having determined that the 1974 MTRFA Board did not have authority to grant Axelson the right to purchase retirement service credit for his 1966–67 and 1967–68 leaves of absence, we conclude that the doctrine of promissory estoppel is not applicable to Axelson's claims and therefore does not prevent the MTRFA from denying Axelson the right to purchase the retirement service credits. Further, we have no occasion to determine the interest rate to be used in calculating the amount required to purchase the retirement service credits.

Reversed.