Wilbur HANNAN, Relator,

v.

CITY OF MINNEAPOLIS, Respondent.

No. C6–00–1335.

Court of Appeals of Minnesota.

March 20, 2001.

Ronald I. Meshbesher, Jonathan M. Peck, Meshbesher & Spence, Ltd., Minneapolis, MN, for relator.

Jay M. Heffern, Minneapolis City Attorney, Peter W. Ginder, Assistant City Attorney, Minneapolis, MN, for respondent.

Considered and decided by CRIPPEN, Presiding Judge, HARTEN, Judge, and HANSON, Judge.

## OPINION

CRIPPEN, Judge.

Because relator has not identified conflicts between state and local law on the control and destruction of dangerous animals, we affirm an order of destruction issued by the City of Minneapolis. We also find no merit in relator's arguments that state law preempts the municipal ordinance or that city proceedings occurred in this case without due process.

## FACTS

In June 2000, the City of Minneapolis Animal Control Division issued an order for destruction of relator Wilbur Hannan's dog. The order was based on the dog's aggressive behavior, with the conclusion that it represented a danger to public safety. The dog had been involved in four unprovoked bites and a near-bite within a three-year time period, and relator failed to muzzle the dog or keep him properly enclosed.

The first bite occurred in August 1997, when the dog bit an individual walking by relator's home. In September 1997, animal control informed relator that it was declaring the dog "potentially dangerous" under Minn.Stat. § 347.50, subd. 3,[1] and a

---

1. The statute defines a "Potentially dangerous dog" as any dog that

(1) when unprovoked, inflicts bites on a human or domestic animal on public or private property;

(2) when unprovoked, chases or approaches a person, including a person on a bicycle, upon the streets, sidewalks, or any public or private property, other than the dog owner's property, in an apparent attitude of attack; or

"dangerous animal" under Minneapolis, Minn., Code of Ordinances § 64.110(a).[2] An administrative hearing officer upheld the declaration of the dog as potentially dangerous but overruled the declaration of the dog as a dangerous animal under the city ordinance because relator agreed to keep the dog muzzled when the dog was on the porch alone or off the property.

In June 1999, the dog bit relator's neighbor while the neighbor was working in his backyard, adjacent to relator's yard. The dog was then declared a "dangerous dog" under Minn.Stat. § 347.50, subd. 2,[3] and relator was ordered to register the dog as a dangerous animal in Hennepin County and to restrain and muzzle the dog as required by law. *See* Minn.Stat. § 347.52 (2000).[4] In July 1999, the dog lunged at a resident of relator's home and nearly bit him. Relator admitted that the dog was leashed but not muzzled when this near-bite occurred.

In November 1999, the dog bit a woman who was walking near or in relator's yard. The dog was not muzzled or leashed at the time. Animal control officers met with relator to explain the dangerous-dog regu-

> (3) has a known propensity, tendency, or disposition to attack unprovoked, causing injury or otherwise threatening the safety of humans or domestic animals.
> Minn.Stat. § 347.50, subd. 3 (2000).

**2.** The ordinance defines a "dangerous animal" as

> (1) Any animal which attacks a human being or domestic animal without provocation; or
> (2) Any animal with a known propensity, tendency, or disposition to attack unprovoked, to cause injury to or to otherwise endanger the safety of humans or other domestic animals; or
> (3) Any animal declared by the animal control officer to be a dangerous animal, as defined herein, or any animal determined to be a dangerous animal under the authority of section 64.120 of the Code.
> Minneapolis, Minn., Code of Ordinances § 64.110(a) (2000).

**3.** A "dangerous dog" is defined as any dog that has

lations "to help him understand it better." But in June 2000, the dog bit a visitor of a resident of relator's home, who was standing on the front porch. Again, the dog was not muzzled or leashed.

After receiving notice of the order for destruction, relator appealed the order and the animal control division held an administrative hearing in June 2000. At the hearing, relator was allowed to testify and present several letters that friends and neighbors wrote on the dog's behalf. The hearing officer affirmed the order to destroy the dog, and this decision comes before us for review.

## ISSUE

Are the actions by the City of Minneapolis in regulating and ultimately ordering the destruction of a dangerous animal precluded by state statute?

## ANALYSIS

Generally, a party seeking review of a quasi-judicial agency decision may only do so by filing a writ of certiorari. *Larson v. New Richland Care Ctr.,*

> (1) without provocation, inflicted substantial bodily harm on a human being on public or private property;
> (2) killed a domestic animal without provocation while off the owner's property; or
> (3) been found to be potentially dangerous, and after the owner has notice that the dog is potentially dangerous, the dog aggressively bites, attacks, or endangers the safety of humans or domestic animals.
> Minn.Stat. § 347.50, subd. 2 (2000).

**4.** The requirements for owning a dangerous dog include keeping the dog properly enclosed and muzzled:

> An owner of a dangerous dog shall keep the dangerous dog, while on the owner's property, in a proper enclosure. If the dog is outside the proper enclosure, the dog must be muzzled and restrained by a substantial chain or leash and under the physical restraint of a responsible person. The muzzle must be made in a manner that will prevent the dog from biting any person or animal but that will not cause injury to the dog or interfere with its vision or respiration.
> Minn.Stat. § 347.52 (2000).

538 N.W.2d 915, 918 (Minn.App.1995), *review granted* (Minn. Dec. 20, 1995) *and order granting review vacated* (Minn. Mar. 4, 1997). On certiorari review, the court is limited to considering whether (a) the agency had jurisdiction; (b) "the proceedings were fair and regular"; and (c) "the [agency's] decision was unreasonable, oppressive, arbitrary, fraudulent, without evidentiary support, or based on an incorrect theory of law." *Radke v. St. Louis County Bd.*, 558 N.W.2d 282, 284 (Minn.App.1997) (citation omitted). This court will uphold the decision if the agency provided "any legal and substantial basis" for its action. *Senior v. City of Edina*, 547 N.W.2d 411, 416 (Minn.App.1996) (quotation omitted).

### 1. Conflict doctrine

■ Relator contends that the city ordinance conflicts with state law, but instead of identifying any express or implied terms that are irreconcilable, he cites to matters where the city has provided additional procedures for regulating dangerous animals. The general principles for determining whether an ordinance conflicts with state law are these: (a) Generally, conflict occurs when "the ordinance and the statute contain express or implied terms that are irreconcilable"; (b) more specifically, an ordinance conflicts with state law if it "permits what the statute forbids"; (c) similarly, there is conflict if the ordinance "forbids what the statute *expressly* permits"; and (d) "no conflict exists where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute." *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 352, 143 N.W.2d 813, 816–17 (1966) (citations omitted).

Relator first suggests that because the city ordinance allows for the destruction of animals that have bitten on two or more occasions without expressly exempting provoked attacks, the ordinance is invalid because it "permits what the statute forbids." After comparing the ordinance with the state statute, it is evident that the local provision is merely additional and complementary to the statute, permitting local action that the state statute does not prohibit.

Both the ordinance and the statute provide for the classification and regulation of dangerous-animal behavior. The state scheme contains two procedures for allowing the destruction of a dangerous dog. First, if the owner "is convicted of a crime for which the dog was originally seized," the court may order the dog's destruction if the owner fails to reclaim the dog within seven days after confiscation. Minn.Stat. § 347.54, subds. 1, 2 (2000). The statute also allows for destruction if the owner is convicted of failing to abide by the requirements for registering and maintaining a dangerous dog and is also convicted of "a subsequent violation relating to the same dog." *Id.*, subd. 3 (2000).

■ The local ordinance also provides for destruction in the event the owner fails to abide by city requirements for registering and owning a dangerous dog, but it does not contain procedures allowing the owner to reclaim the dog. Minneapolis, Minn., Code of Ordinances § 64.120 (2000).[5] And instead of approaching the subject matter through the owner's criminal violations, the ordinance allows for destruction based primarily on the conduct of the dog. *Id.* As appellant suggests, some of the provisions of the local ordinance

---

**5.** Section 64.120(a) grants the agency the authority to order the destruction or other disposition of the animal if it:

(1) Has bitten one or more persons on two (2) or more occasions, or

(2) Has caused serious bodily injury or disfigurement to any person, or

(3) Has engaged in an attack on or exhibited unusually aggressive behavior towards any person or other animal under circumstances which would indicate danger to safety of the person or animal, or

(4) Is prohibited by or found to be in violation of section 64.110 of this Code, or

(5) Is prohibited by 74.50 of this Code.

Minneapolis, Minn., Code of Ordinances § 64.120(a) (2000).

may be more severe. But as long as the state has not expressly precluded local regulation, there is no conflict when the state regulates a topic and the local government adds additional regulations that provide consequences greater than those already provided. *See City of Duluth v. Evans*, 158 Minn. 450, 452 197 N.W. 737, 737 (1924) ("Ordinances may be valid when they relate to the same matter as a state law, even though the punishment prescribed in both be not the same." (citation omitted)). "[S]tatutes and ordinances on the same subject are intended to be coexistent." *State v. Dailey*, 284 Minn. 212, 215, 169 N.W.2d 746, 748 (1969).

### 2. Preemption

■ Relator also insists that state law preempts the municipal ordinance. Local regulation will be preempted when the legislature has fully and completely covered the subject matter, clearly indicated that the subject matter is solely of state concern, or the subject matter itself is of such a nature that local regulation would have unreasonably adverse effects on the general populace. *Mangold Midwest Co.*, 274 Minn. at 357–60, 143 N.W.2d at 820–21. Relator has not established preemption on any of these grounds.

■ First, the legislature has neither expressly nor impliedly indicated that the subject matter is solely a matter of state concern. In fact, state law expressly provides for local regulation. Minn.Stat. § 347.53 (2000) [6] gives municipalities full authority to regulate "potentially dangerous dogs," as long as the regulations are not breed-specific. *See* Minn.Stat. § 347.51, subd. 8 (2000).[7] Moreover, Minn.Stat. § 609.227 (2000), which man-

dates destruction if the owner has committed a misdemeanor or gross misdemeanor for a crime involving the animal, specifies that the "section shall not preempt local ordinances with more restrictive provisions." Further, we find no basis in relator's contention that the authority given in section 609.227 is limited to the specific subject matter of destruction after conviction.

The expectation of local regulation is also implied. By providing only one express limitation to regulation—that regulation not be breed-specific—the legislature has implicitly given municipalities full authority to regulate dangerous dogs. *See Maytag Co. v. Commissioner of Taxation*, 218 Minn. 460, 463–64, 17 N.W.2d 37, 40 (1944) ("[W]here the statute designates an exception, proviso, saving clause, or a negative, * * * the exclusion of one thing includes all others." (citations omitted)).

Finally, the regulation and control of dangerous dogs is a wholly legitimate issue for municipal interest because it primarily affects the local populace. *American Dog Owners Ass'n, Inc., v. City of Minneapolis*, 453 N.W.2d 69, 72 (Minn.App.1990) ("The City [of Minneapolis] has a high interest in taking appropriate measures for animal control."); *see also State v. Westrum*, 380 N.W.2d 187, 190 (Minn.App. 1986) (refusing to preempt local regulation of food vendors because it was "an area in which local governments are particularly interested because local fairs primarily affect the local populace").

### 3. Due process

■ In addition, relator questions the authority of the animal control division to issue the order for destruction and the

---

6. Section 347.53 (Potentially Dangerous Dogs) provides:

> Any statutory or home rule charter city, or any county, may regulate potentially dangerous dogs. Except as provided in section 347.51, subdivision 8, nothing in sections 347.50 to 347.54 limits any restrictions the local jurisdictions may place on owners of potentially dangerous dogs.

Minn.Stat. § 347.53 (2000).

7. Minn.Stat. § 347.51, subd. 8 (2000) states:

> A statutory or home rule charter city, or a county, may not adopt an ordinance regulating dangerous or potentially dangerous dogs based solely on the specific breed of the dog. Ordinances inconsistent with this subdivision are void.

constitutionality of the procedures afforded by the ordinance before destruction is to occur. But relator provides no evidence indicating that the division does not have the authority to issue the order for destruction. Also, the due-process topic as briefed is entirely worded in issues that this court has already decided. *See American Dog Owners Ass'n,* 453 N.W.2d at 72 (reversing the trial court's determination that Minneapolis Ordinance section 64.120(b)(1)–(2) was unconstitutional, concluding that procedures afforded by the ordinance comported with due-process requirements).

■ Relator contends that his due process rights were violated because the hearing officer disregarded his "uncontradicted testimony" that his dog's conduct was provoked. But relator does not dispute the evidence in the record that strongly suggests several, if not all, of the dog's attacks were unprovoked, which justifies the hearing officer's findings. Relator further contends that in weighing the evidence, the administrative court impermissibly adopted written reports over personal testimony, but relator cites to no authority, and this court has found none, to demonstrate that the hearing officer could not find the written reports to be just as reliable as live testimony.[8]

## DECISION

Because we conclude that the municipal ordinance providing for the destruction of dangerous animals is not in conflict with or preempted by state law, we affirm the hearing officer's decision that the order for destruction was valid and duly authorized. We also find no merit in relator's contention that his due-process rights were violated; the record does not indicate that the agency's decision was arbitrary, unreasonable, or without evidentiary support.

**Affirmed.**

---

**8.** Although the submission of written reports instead of personal testimony could be perceived as a violation of relator's constitutional right to confront the witnesses against him, he did not raise this issue below or in his appellate brief. Consequently, we decline to address the issue. *See State, Dep't of Labor & Indus. by Special Comp. Fund v. Wintz Parcel Drivers, Inc.,* 558 N.W.2d 480, 480 (Minn. 1997) (declining to reach issue in absence of adequate briefing).