*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0656**

In the Matter of the Determination of a
Dangerous Animal Seizure and Order to Destroy

**Filed January 17, 2017
Affirmed
Smith, John, Judge***

City of St. Paul Department of Safety and Inspections
Agency File No. AC16-0006

James Heiberg, St. Paul, Minnesota (for relator)

Samuel J. Clark, St. Paul City Attorney, Virginia D. Palmer, Assistant City Attorney, St. Paul, Minnesota (for respondent City of St. Paul Department of Safety and Inspections)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Smith, John, Judge.

## UNPUBLISHED OPINION

**SMITH, JOHN**, Judge

We affirm the City of St. Paul Department of Safety and Inspection's (department) municipal order to destroy relator's dangerous dog because the order is supported by substantial evidence and relator's due-process rights were not violated.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Relator Richelle Cordry owns two dogs, Meesha and Myou. In September 2014, respondent department designated Meesha and Myou as "potentially dangerous." The department based the designation on two prior incidents in which Meesha and Myou attacked other dogs. A third incident occurred on October 12, 2014, in which Meesha and Myou again attacked another dog.

On October 21, 2014, Animal Control designated Meesha and Myou as "dangerous" under St. Paul, Minn., Legislative Code § 200.12 (2016). The City of Saint Paul requires owners of animals designated as dangerous to comply with numerous conditions, including (1) "provide and maintain a proper enclosure;" (2) "[i]f the animal is a dog and is outside the proper enclosure, the dog must be muzzled and restrained by a substantial chain or leash" not to exceed three feet in length "and under the physical restraint of a person eighteen" years of age or older; and (3) "have an easily identifiable, standardized tag identifying the dog as dangerous affixed to the dog's collar at all times." St. Paul, Minn., Legislative Code § 200.121(a) (2016).

On September 13, 2015, Myou escaped from Cordry's residence and injured a child's ear. Based on that incident, the department ordered destruction of Myou. Cordry requested a hearing to contest the department's determination. The hearing officer stayed the order to destroy for one year provided that Cordry had no further violations of the requirements for owning an animal designated as dangerous.

On March 11, 2016, Animal Control officers responded to an anonymous complaint that two dogs at Cordry's residence were unmuzzled and unmonitored. The officers

observed that the dogs were unmuzzled, unmonitored, not in a proper enclosure, and not wearing dangerous-dog tags. The officers seized the dogs and the department issued an order to destroy.

Cordry requested a hearing to contest the department's determination. On March 29, 2016, the department held a hearing during which Cordry and Animal Control officers testified regarding whether Cordry had violated the conditions of owning animals designated as dangerous. The hearing officer upheld the order to destroy Myou, stating that "'Meesha' and 'Myou' were not properly restrained as required under Saint Paul Legislative Code" and that "Cordry did violate the conditions of owning an animal declared dangerous." This appeal follows.

## D E C I S I O N

## I.

Cordry contends that the hearing officer's "decision to destroy Myou was unsupported by substantial evidence." She argues that the department failed to present documentary evidence showing that she "had failed to live up to the dangerous dog requirements." Cordry does not challenge the stayed order to destroy Myou. She challenges whether the department presented substantial evidence to show that she violated the conditions for owning a dog designated as dangerous and thus violated the conditions of the stayed order to destroy Myou.

Appellate review of a municipal agency's action is limited to questions regarding the agency's jurisdiction, "the regularity of its proceedings," and "whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent,

3

under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992) (quotation omitted). "A quasi-judicial decision of an agency that does not have statewide jurisdiction will be reversed if the decision is 'fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law." *Axelson v. Minneapolis Teachers' Ret. Fund Ass'n*, 544 N.W.2d 297, 299 (Minn. 1996) (quotation omitted). This court "will not retry facts or make credibility determinations, and we will uphold the decision if the lower tribunal furnished any legal and substantial basis for the action taken." *Staeheli v. City of St. Paul*, 732 N.W.2d 298, 303 (Minn. App. 2007) (quotation omitted).

Section 200 of the St. Paul Legislative Code regulates the designation and ownership of dangerous animals. Under the Code:

> If . . . [an] environmental health officer does not order the destruction of an animal that has been declared dangerous, . . . [the] environmental health officer shall, as an alternative, order any or all of the following [conditions], excepting for dogs, in which case all shall be applicable and which will be reviewed on an annual basis by the animal control officer.

St. Paul, Minn., Legislative Code § 200.121(a). The Code enumerates ten conditions, including:

> (1) That the owner provide and maintain a proper enclosure for the dangerous animal as specified in section 200.01; and
> . . . .
> (4) If the animal is a dog and is outside the proper enclosure, the dog must be muzzled and restrained by a substantial chain or leash (not to exceed three (3) feet in length) and under the physical restraint of a person eighteen (18) years of age or older. The muzzle must be of such design as to prevent the dog from biting any person or animal, but will not

4

cause injury to the dog or interfere with its vision or respiration; and

(5) If the animal is a dog, it must have an easily identifiable, standardized tag identifying the dog as dangerous affixed to the dog's collar at all times as specified in Minnesota Statute 347.51 . . . .

*Id.* A "proper enclosure" is defined as "securely confined indoors or in a securely locked pen or kennel." St. Paul, Minn., Legislative Code § 200.01 (2016). "A pen or kennel shall meet the following minimum specifications . . . [a] cover over the entire pen or kennel shall be provided." *Id.*

The hearing officer found that in September 2015, "[a]n Order to Destruct 'Myou' was issued by the Saint Paul Animal Control. Upon appeal, the order was stayed for 1 year, provided there were no further ordinance violations." It further found that "[o]n March 11, 2016, Saint Paul Animal Control observed 'Meesha' and 'Myou' not properly restrained as required under Saint Paul Code." The hearing officer concluded that "'Myou' [was] not properly restrained as required under Saint Paul Code," and that Cordry violated the conditions of owning an animal designated as dangerous within the one-year stay period.

During the hearing, an Animal Control officer testified regarding the March 11 violations, "When we first arrived, the dogs were tied up out in the yard unmuzzled, did not have the dangerous dog tags, and [Cordry] brought them inside the house when we told her why we were there." Cordry testified that Myou was tied up in her yard and acknowledged that Myou was unmuzzled.

5

Cordry's testimony supports a finding that she violated the conditions of owning a dog designated as dangerous. Her yard is not a proper enclosure because it does not contain a cover over the entire pen or kennel. Because Cordry placed Myou outside a proper enclosure, Myou had to be muzzled. Cordry acknowledged that Myou was unmuzzled. Moreover, one of the responding officers testified that the dogs were outside a proper enclosure and unmuzzled. Thus, the department had a legal and substantial basis for concluding that Cordry violated the conditions of the stayed order to destroy Myou.

## II.

Cordry contends that the St. Paul Legislative Code regarding dangerous animals is preempted by state statute. She argues that the department "does not have the right to create more stringent requirements on the matters of muzzles and proper enclosures."

Local regulation is "preempted when the legislature has fully and completely covered the subject matter, clearly indicated that the subject matter is solely of state concern, or the subject matter itself is of such a nature that local regulation would have unreasonably adverse effects on the general populace." *Hannan v. City of Minneapolis*, 623 N.W.2d 281, 285 (Minn. App. 2001).

The state statutes regulating dangerous dogs expressly permit additional local regulation. Minn. Stat. § 347.53 (2014) provides that "nothing in sections 347.50 to 347.565 limits any restrictions that the local jurisdictions may place on owners of potentially dangerous or dangerous dogs." Although there is a statute that prohibits local regulation "based solely on the specific breed of the dog," that section is inapplicable here. Minn. Stat. § 347.51, subd. 8 (2014).

Cordry argues that the statutory definition for a proper enclosure controls because Minn. Stat. § 347.56 (2014) states that the definitions in section 347.50 apply to animal-control hearings. Section 347.50 contains a definition for a proper enclosure that does not explicitly require an enclosure to have a roof or cover. Minn. Stat. § 347.50, subd. 4 (2014). However, Cordry's reading of the statutes is contrary to their plain meaning. Section 347.53 provides that municipalities are not prohibited from creating more restrictive regulations for either the definitions or the hearings associated with ordering the destruction of a dog. *See* Minn. Stat. § 347.53 ("[N]othing in sections 347.50 to 347.565 limits any restrictions that the local jurisdictions may place on owners of potentially dangerous or dangerous dogs."). In sum, the St. Paul Legislative Code definitions regarding dangerous dogs are not preempted by state statute.

**III.**

Cordry contends that the department's "presentation to this court of evidence not presented at the hearing" is a violation of her due-process rights. She argues that "the department has submitted to this Court an itemized list of the 'record' below consisting of 27 documents, but only two (2) of these documents were actually presented as evidence at the hearing." Cordry's testimony at the hearing supports the conclusion that she violated the terms of the stayed order to destroy Myou. This court does not need to consider any of the allegedly "new" documents submitted by the department. Thus, we need not address Cordry's due-process arguments regarding the allegedly "new" documents.

**Affirmed.**